## Israel Cooke *vs.* Samuel England.

*Pleading—Covenant—United States Internal Revenue Laws —Affixing and Cancelling of Stamps—Necessary Repairs —Measure of Damages.*

An action was brought in covenant, and the declaration simply averred that the defendant *covenanted* with the plaintiff, without saying *under seal*, or using any technical word or phrase, which in legal acceptation would import a seal. The defendant did not demur, but pleaded to the declaration. The cause of action was a sealed instrument. HELD :

That under the mode of pleading observed in this State, the defect, if such, in not alleging that the contract was under seal, was waived by pleading over, and it was not error in the Court below to allow said contract to go before the jury.

An agreement for a lease, which under the Acts of Congress imposing duties for internal revenue, required a stamp, was not stamped at the time of its execution; subsequently the proper stamp was affixed to it and cancelled by the Collector of Internal Revenue, at the time it was offered in evidence, and the penalty paid to him, and so noted by him on the margin of the instrument. HELD :

That such instrument is thereby rendered valid and admissible in evidence.

Under a covenant in a lease, to keep a mill in necessary repairs, the covenantor is not bound to add improvements or make additions, but he is required to renew existing machinery when too old and worn to answer its purpose in the mill.

Damages arising subsequent to action brought, or even to the date of the verdict, may be taken into consideration, where they are the natural and necessary result of the act complained of, and where they do not themselves constitute a new cause of action; and general evidence of matter accruing subsequent to the action may be used for the purpose of showing what was the natural and probable result of the defendant's conduct; but particular facts are not admissible as a specific ground of damage, to be atoned for on their own account. Where the act complained of, or the breach assigned, is one and complete in itself, and the damages flow naturally and necessarily from it, the jury can include all to the date of the verdict. This principle would not apply to nuisances and continued trespasses upon land.

In a lease for a year, the lessor covenanted to repair; suit was instituted against him during the lease, and the trial took place after the term had expired. The breach assigned was a refusal to repair. All the consequences of this refusal could be considered by the jury, those subsequent as well as those prior to the institution of the suit, thus terminating the

controversy arising from the breach of the covenant assigned in the declaration.

In assessing damages, certainty, as far as the nature of the case will admit of, is to be aimed at and ascertained; mere speculative injuries, depending on uncertain future contingencies, afford no ground for damages.

APPEAL from the Circuit Court for Frederick County.

While this case is very clearly and fully stated in the opinion of the Court, it is deemed proper to present substantially the very numerous exceptions in the order in which they were taken in the Court below, omitting, however, the extended argument of counsel, and merely giving the authorities on which they relied :

*1st Exception*, (by appellant.) The plaintiff offered in evidence the cause of action, being the agreement to lease, the execution of which was admitted. The defendant objected to the admissibility of this paper in evidence, under the pleadings, but the Court (NELSON, J.) overruled the objection and permitted it to go to the jury ; and to this ruling the defendant excepted.

*2d Exception*, (by appellant.) The defendant objected to the admissibility in evidence of the cause of action, on the ground that it had not been duly and legally stamped, and the stamp thereon cancelled according to the provisions of the Acts of Congress imposing duties for internal revenue. But the Court overruled the objection, and permitted the paper to go to the jury; and to this ruling the defendant excepted.

*Exception*, (by appellee.) Having given evidence that the *bolting cloths* in the mill, (which was a flour or grist mill,) were very much eaten by bugs and out of order, the plaintiff proposed to prove that there was a *saw mill* appurtenant to said grist mill, and run by the same stream of water, and that by a *usage* in the neighborhood in which this contract was entered into, wherever a grist mill was rented to which there was a saw mill so appurtenant, the renting always included the saw mill.

To the admissibility of this evidence under the pleadings, the defendant objected, and the Court sustained the objection and refused to allow such testimony to go to the jury. To this ruling the plaintiff excepted.

*3d Exception*, (by appellant.) The plaintiff proposed to prove by a practical miller that in the condition of the bolting cloth as it was when he examined it in September, 1863, a *new bolting cloth* was a necessary repair. The defendant objected to the admissibility of this proof, but the Court allowed it to go to the jury, and the defendant excepted.

*4th Exception*, (by appellant.) The plaintiff then asked the witness: What in his judgment, as an experienced miller, was the effect upon the *quality and value per barrel of the flour* manufactured in that mill during the plaintiff's lease, whilst the bolting cloths were in the impaired and worn out condition as described by him, and because of want of the *necessary repairs* to that part of the machinery of the mill? The defendant objected to the competency and admissibility of this question and of the testimony in response thereto. The Court overruled the objection and permitted the question to be asked, and answered; and to this ruling the defendant excepted.

*5th Exception*, (by appellant.) It had been proved in the preceding exceptions, that Foutz and Groff had made an examination of the mill in September, 1863, and in this exception it was proved by Gartrell, that he was at the mill at the time Foutz was there, and from the mill he, Gartrell, went over to Cooke's store, and Cooke asked him what they were doing at the mill, and he told Cooke they were examining the mill. The plaintiff's counsel then asked, what did Cooke say in that conversation about the mill? The defendant objected to the admissibility of this proof to establish a demand by the plaintiff on defendant to repair the mill, and a refusal by the latter to do so, unless the plaintiff should show that the witness

was authorized by the plaintiff to hold said conversation with the defendant, or to demand of the defendant that he should make repairs to the mill. The Court overruled the objection and permitted the evidence to go to the jury, and to this ruling the defendant excepted.

*6th Exception*, (by appellant.) It was proved by Mercer that he was hired by the plaintiff as a miller in this mill for three weeks in April, 1863, and that James England, a young man 18 or 21 years of age, was employed by the plaintiff as head miller. The defendant then proposed to ask this witness whether during these three weeks he had an opportunity to ascertain and determine whether or not James England was a competent miller to conduct a mill, and if yea, was he such competent miller or not? The plaintiff objected to this question and to the proposed proof, and the Court sustained the objection and refused to permit the question to be asked, and to this ruling the defendant excepted.

*7th Exception*, (by appellant.) The defendant offered to prove in mitigation of damages, that in September, 1843, Henry S. Deihl offered to rent from the plaintiff the mill from the 1st of October, 1863, to 1st of April, 1864, and pay him $237.50, half the year's rent, and $50 in addition, and to buy at a fair cash valuation all the grain, tools and other property which the plaintiff had in and about the mill, and that the plaintiff refused to accept this offer. On the plaintiff's objection the Court refused to permit this evidence to go to the jury, and the defendant excepted.

*8th Exception* (by appellant) abandoned.

*9th Exception*, (by appellant.) It had been proved on the part of the plaintiff by Davis, that in the latter part of July, 1863, James England (now dead) read a notice in writing to Cooke, who after reading it became excited and refused to take it, and said he would not repair the mill and would sue any man who came there to repair it.

In the present exception the defendant proposed to prove by the witness, A. W. Cooke, that he was present at the time spoken of by Davis, and the only paper then delivered by Jas. England, to defendant, was a notice from the plaintiff warning the defendant and his family to keep out of the plaintiff's yard, under a threat of prosecution. On objection by the plaintiff to the admissibility of this proof, the Court rejected it, and to this ruling the defendant excepted.

10th Exception, (by appellant.) The defendant proved by Zumbrum, that he had carried on this mill for 8 or 9 years, and left it on the 31st of March, 1863. The defendant then proposed to ask him how long would the bolting cloths in use in the mill when he left it, and the plaintiff took possession, have lasted, and made good flour, with proper care and attention on the part of the miller carrying on the mill? The Court refused to allow this proof to be offered, because there was no issue raised by the pleadings to which such testimony was applicable, and to this ruling the defendant excepted.

11th Exception, (by appellant.) The defendant then proposed to ask this witness what was the condition of the wheat and flour elevators in the mill when the plaintiff went into possession in April, 1863? This evidence the Court also rejected, and the defendant excepted.

12th Exception, (by appellant.) The defendant then proposed to ask this witness whether the mill was not repaired by the defendant in February, 1863, whilst witness occupied the mill as tenant of the defendant. The Court refused to permit said question to be asked, and to this refusal the defendant excepted.

13th Exception, (by appellant.) The defendant then proposed to ask the witness whether the mill had been put in good repair at any time by the defendant prior to the 1st of April, 1863, and, if so, when, and was it on the 1st of April, 1863, when the plaintiff took possession,

Cooke *vs.* England.

in as good repair as it had been so placed in by defendant? The Court refused to permit the question to be asked, and to this refusal the defendant excepted.

*14th Exception,* (by appellant.) The defendant proposed to prove by Zumbrum that the condition of the bolting cloth in use on the 1st of April, 1863, was such that if a competent and careful miller had been in charge of the mill from that time forward, and if the owner of the mill had procured and delivered to him a new bolting cloth on the 1st of April, 1863, with authority to have the same put in by a mechanic competent to do so, at the owner's expense, whenever the miller might think proper, such competent and careful miller would not, in the exercise of proper care and skill, have caused the same to be put in earlier than October or November, 1863, because the old cloth then on was sufficient to manufacture good flour with reasonable care and attention until that time, and because during the season of warm weather the bolting cloth in use is peculiarly liable to injury by worms and bugs, and new cloths are usually kept by prudent and careful millers to put on during the season of cold weather, in cases where the bolting cloth in use is sufficient to manufacture good flour during the summer months. This evidence the Court would not allow to be given to the jury, and to this ruling the defendant excepted.

*15th Exception,* (by appellant.) The plaintiff had in order to swell the damages proved, in the preceding exceptions, that the defect in the bolting cloths was such as to prevent the making of flour that would pass the necessary inspection as extra or superfine in the Baltimore market. In this exception the defendant proposed to prove by the witness Zumbrum, that the country work at this mill was large; that during the summer months it was the usual custom of witness whilst conducting this mill, to supply the neighborhood with flour, and to do

chopping for the neighborhood, and whilst such chopping was being done, and whilst the water was low, the miller was exclusively or to a great extent engaged in that work, and flour could not be made at the same time; that the power of the mill during the summer months was small, occasioned by the drought usually prevalent at that season; that it was only when he had a large stock of wheat on hand and the waters were flush that he ground flour for the Baltimore market during the summer months, and that was only occasional. The Court refused to permit the question to be asked, and to this refusal the defendant excepted.

*16th Exception,* (by appellant.) Upon all the evidence in the cause the defendant submitted the following prayers:

1st. That the plaintiff, if he can recover at all, is entitled to recover only such damages as he may have offered proof to shew, that he sustained in consequence of the want of repair of the mill in question, between the date of a demand, made by him on the defendant, to repair said mill, if the jury shall find from the evidence, that such demand was in fact made at any time, and the 30th day of September, 1863, and that the damages which he can recover, are only the actual loss sustained by him, and shewn by proof to have been so sustained, between said dates, on account of the refusal of the defendant to make the repairs demanded.

2d. If the jury shall find from all the evidence, that the plaintiff did not at any time between the first day of April, and the 30th day of September, 1863, demand of the defendant, that he should make repairs to said mill, then the plaintiff cannot recover in this action.

3d. That there is not sufficient evidence, from which the jury can find, that from the first day of April to the 30th day of September, 1863, the plaintiff demanded of the defendant, that the defendant should make repairs to said mill.

4th. That there is no sufficient evidence in the cause, from which the jury can find any amount of damage sustained by the plaintiff, prior to the 30th day of September, 1863, in consequence of the failure or refusal of the defendant to make repairs to said mill.

5th. That the plaintiff cannot recover, because the covenant or agreement offered in evidence by the plaintiff, was not duly stamped, according to the Act of Congress in such case made and provided, provided the jury shall believe the evidence of Henry S. Davis, that no stamp whatever was put on said covenant, at the time when the same was entered into, and executed by the plaintiff and defendant, and that, at that time, no stamp was on or attached to said paper or covenant.

6th. That the plaintiff cannot recover, because the stamp or stamps put on said covenant, and now appearing thereon, even if the same were duly placed thereon, have not been cancelled according to law.

7th. That the plaintiff cannot recover, because the covenant offered in evidence by the plaintiff was not duly stamped, or had not a stamp attached thereto or thereon, according to law, when the same was entered into and executed by plaintiff and defendant; and because the stamps of fifty cents each appearing on the face thereof, to have been placed thereon on the 14th day of November, 1865, were so placed thereon, without authority, and did not in law give legal validity to said covenant.

8th. That to enable the plaintiff to recover in this cause, the jury must find that he made a demand on the defendant, to repair the mill in question, and that he designated the required repairs, and that defendant failed or refused to make the repairs so designated by the plaintiff. And if the jury shall so find, then the plaintiff is entitled to recover only such damages as the jury shall find from the evidence that the plaintiff sustained in consequence of the failure or refusal of defendant to make

such designated repairs, between the date of said demand and designation of requisite repairs, and the day of the institution of this suit, to wit: the 30th day of September, 1863.

9th. That the plaintiff is not entitled to recover in this cause, because there is no sufficient evidence from which the jury can find the facts stated and mentioned in the plaintiff's prayer.

10th. That if the jury shall believe from the evidence that the defendant rented the mill to the plaintiff with a general covenant to repair, and that the said mill had been operated for several years prior to said renting, and that said mill was in the same condition of repair during the continuance of the lease to the plaintiff, as it was at the date of the lease, then the plaintiff is not entitled to recover.

11th. That if the jury shall believe from all the evidence, that the defendant covenanted with the plaintiff to repair the mill in question, and that said mill had been in use for many years, then the defendant was not bound under his covenant to repair, to put the said mill in an improved condition, but, that keeping the same in the same condition of repair in which it was at the time of the renting by defendant to plaintiff was a compliance by defendant with his covenant to repair.

12th. That if the jury shall find from all the evidence, that at any time during the continuance of the plaintiff's leasing and occupancy of said mill, the said mill became out of repair in any particular or respect, and required repair in said particulars or respects so found, because of the carelessness, negligence, unskilfulness, or other like default of the plaintiff, then the plaintiff is not entitled to recover in this cause, for any thing which the jury shall find to have been caused by, or resulted from his said negligence, carelessness, unskilfulness, or other like default.

13th. That if the jury believe that the defendant leased the mill in question to plaintiff, and covenanted to repair the same, and that the defendant failed to repair the same upon demand made by plaintiff; and shall further believe from the evidence, that such demand was made; then, and in that case the plaintiff is only entitled to recover such damages as naturally flowed from the neglect of the defendant to repair the mill in the particulars designated by plaintiff, and which resulted from the neglect to repair the mill in the particulars designated, from the time of demand until the institution of this suit, and that the plaintiff is not entitled to recover speculative damages, based on calculations as to the profits arising from the sale of flour which plaintiff might have manufactured, and sold between the date of such demand to repair, and the date of the institution of this suit.

14th. That the plaintiff cannot recover in this cause for, or on account of any damages whatsoever, subsequent to the 30th day of September, 1863, the day of suit brought.

15th. That upon all the pleadings and evidence in this cause, the plaintiff is not entitled to recover, because the plaintiff's declaration is radically defective, as there are no good and sufficient breaches assigned in said declaration, to entitle the plaintiff to recover under the pleadings and evidence.

16th. That the plaintiff has not given to the jury any good and sufficient evidence, to entitle him to recover in this form of action, under the declaration in this cause.

17th. That under the pleadings in this cause the plaintiff is not entitled to recover, unless the jury shall believe from all the evidence in the cause, that the plaintiff made a demand on the defendant to make repairs on the mill in question.

The Court rejected each and all of said prayers, and the defendant excepted.

17*th Exception*, (by appellant.) The plaintiff submitted the following prayer :

If the jury shall find that the defendant leased to the plaintiff the mill mentioned in the declaration in this case, from the first day of April, 1863, to the first day of April, 1864, and covenanted in said lease to keep the mill in necessary repairs, at the defendant's expense, and shall further believe from the evidence that the defendant knew of the want of, and refused and neglected to make the necessary repairs in said mill during the said lease, and was not hindered or prevented from making said repairs by the plaintiff, then the plaintiff is entitled to recover such damages caused, during the continuance of said lease, by the want of said repairs or by said neglect and refusal of the defendant to make the same, as the jury shall find from the evidence he is entitled to. Which prayer the Court granted, and to the granting of which the defendant excepted. The verdict and judgment being in favor of the plaintiff, the defendant appealed.

The cause was argued before BOWIE, C. J., BARTOL, GOLDSBOROUGH and WEISEL, J.

*Oliver Miller* for the appellant.

Upon the appellant's first exception, the following authorities were referred to : *Van Santwood vs. Sandford*, 12 *Johns.*, 197 ; *Macomb vs. Thompson*, 14 *Johns.*, 207 ; *Hays et al. vs. Lasater et al.*, 3 *Ark.*, 568 ; *Stanton vs. Camp*, 4 *Barb.*, 274 ; *Cabell vs. Vaughan*, 1 *Saund.*, 291, *note* (1).

Upon the second exception of the appellant, reference was made to the following Acts of Congress : 1862, *ch.* 119, *secs.* 94, 95, 99, *and Schedule B, in* 12 *U. S. Stat. at Large*, 475, 476, 482 ; 1862, *ch.* 163, *sec.* 24, *in* 12 *U. S. Stat. at Large*, 560, 561; 1863, *ch.* 4, *sec.* 5, *in* 12 *U. S. Stat. at Large*, 632, 633 ; 1863, *ch.* 74, *secs.*

6, 7, 16, *in* 12 *U. S. Stat. at Large*, 720, 721, 724, 725 ; 1864, *ch.* 173, *secs.* 151, 152, 156, 157, 158, 163. *and Schedule B, in* 13 *U. S. Stat. at Large*, 291, 292, 293, 294, 295, 300 ; 1865, *ch.* 78, *sec.* 1, *in* 13 *U. S. Stat. at Large*, 481, 482.

Upon the third, seventh, eleventh, twelfth and thirteenth exceptions of the appellant the following authorities were cited : *Middlekauff vs. Smith*, 1 *Md. Rep.*, 339, 340 ; *Arch. Land. and Ten.*, 173.

And on the seventeenth exception the following authorities were relied on : *Mayne's Law of Damages*, 52, 59, 61, 62 ; *Middlekauff vs. Smith*, 1 *Md. Rep.*, 339, 340 ; *Sedgwick on Damages*, 203, 204 ; *Arch. Land. and Ten.*, 177 ; *Thompson vs. Shattuck*, 2 *Metcalf*, 615 ; *Abbott vs. Gatch*, 13 *Md. Rep.*, 314 ; *Eisenlohr vs. Swain et al.*, 35 *Penn. Rep.*, 107 ; *Marriott vs. Cotton*, 61 *Eng. Com. Law Rep.*, 553.

*Grayson Eichelberger* for the appellee.

Upon the appellant's first exception the following authorities were relied on : *Platt on Covenants*, 3 ; *Dodd vs. Atkinson, Hardwick's Cases*, 342 ; *Gould's Plead.*, 190 ; *Sheppard's Touchstone*, 160 ; 1 *Chitty's Plead.*, 131, (*Title Covenant*) ; *Bouvier's Law Dict.*, "*Covenant*;" *Miles vs. Sheward*, 8 *East. Rep.*, 7 ; *Code of Pub. Genl. Laws*, Art. 75, secs. 2, 3 ; *Stirling et al. vs. Garrittee*, 18 *Md. Rep.*, 468 ; *Borden Mining Co. vs. Barry*, 17 *Md. Rep.*, 431.

Upon the appellant's third exception the following authority was referred to : 1 *Greenl. Ev.*, sec. 440.

Upon the appellant's sixth and tenth exceptions reference was made to 1 *Chitty's Plead.*, 137.

Upon the appellant's sixteenth exception the following authorities were relied on : *Arch. Land. and Ten.*, 35, 100 (*marginal paging*) ; *Roe vs. Paine*, 2 *Campb.*, 520 ; 2 *Platt on Leases*, 216, and cased cited ; *Mayne's Law of Damages*, 37 (*marginal page*) ; *Shortridge vs. Lamplugh*,

2 *Ld. Raymond*, 803 ; 2 *Greenl. Ev.*, sec. 268, *a ; Ingram vs. Lawson*, 9 *Carr & Payne*, 326 ; *Slater vs. Magraw*, 12 *G. & J.*, 265.

Upon the appellant's seventeenth exception the following authorities were cited : *Mayne's Law of Damages*, 37 *(top page)* ; *Abbott vs. Gatch*, 13 *Md. Rep.*, 314 ; *Middlekauff vs. Smith*, 1 *Md. Rep.*, 341 ; *Masterton vs. Mayor of Brooklyn*, 7 *Hill*, 62 ; *Sedgwick on Damages*, 65, 81, 82, 83, 84, 85.

WEISEL, J., delivered the opinion of this Court.

The action in this case was brought in covenant on the 30th September, 1863, by the appellee, plaintiff below. The declaration averred that the defendant covenanted with the plaintiff to rent to him, the plaintiff, for a certain annual rent, a mill and premises in Carroll county, and that he, the defendant, would, at his expense, keep said mill in the necessary repairs. The breach assigned was that the defendant did not keep the said mill in the necessary repairs, at his, the defendant's expense, according to said stipulation, and that he did not perform his said covenant.

The defendant pleaded four pleas: 1st, that he was not indebted as alleged; 2d, that he never promised as alleged; 3d, that he was always ready to make repairs to the mill when thereto requested by the plaintiff, and that the plaintiff never notified him that such repairs were needed, and never requested him to make such repairs as alleged in the declaration; and 4th, that the plaintiff hindered and prevented the defendant from making repairs on the mill.

Issues were taken on the pleas, and on the trial of them a verdict was rendered for the plaintiff.

In the course of the trial several exceptions were taken to the admissibility of proof. The first was by the defendant to the admissibility of the lease itself under the

pleadings in the cause. The lease was offered by the plaintiff, and was found to be under *the seals* of the parties ; but the Court overruled the objection and allowed the paper to be offered in evidence. The point of the exception was that as the lease was under *the seals* of the parties, it could not be offered in evidence under a declaration which simply averred that the defendant *had covenanted*, without adding *under seal;* that the word *covenant* does not *per se* import that the instrument declared on was sealed ; that word being frequently used in contracts not under seal ; and that the rule of pleading is imperative that where a sealed instrument is the cause of action the declaration must aver it to be under seal, or use some word that legally imports a seal ; otherwise the variance is fatal.

In Maryland, since the adoption of the Code, forms of action are again observed, and the declaration must so far correspond with the writ or summons as to show the party entitled to the action brought. Otherwise it would be liable to a demurrer. Under the Act of 1856, ch. 112, which abolished forms of action, this Court, on more than one occasion, could not disregard the substantial principles which underlie our system of jurisprudence, and to some extent govern the forms of action, though changed or simplified. *Stirling et al. vs. Garitee,* 18 *Md. Rep.,* 475.

The case before us was in covenant. The defendant did not demur, but pleaded to the declaration. The objection arose to the proof as not admissible under the *nar.* The contract offered was a sealed instrument. So far as the form of action was concerned, no objection could be taken to it. The want of a seal would present a more tenable ground of objection. But inasmuch as the declaration avers simply that the defendant *covenanted* with the plaintiff, without saying *under seal,* or using some technical word or phrase which in legal acceptation imports a seal, the instrument offered, it is insisted, presents an

instance of fatal variance, and should be excluded by the rules of evidence.

If a demurrer had been interposed the Court would be called upon to say whether under our present simplified mode of pleading, the declaration could be maintained. The cases cited by the appellant, from New York and Arkansas, and supported by the English authorities, would sustain the demurrer, though the distinction stated by Judge Gould in his treatise on Pleading, pp. 189, 191, between averments on contracts valid at common law *only by deed*, and those which by statute are required to be in writing, ought in such a presentation of the question to be properly considered. But we are not called on now to decide, and do not decide this question. In this case, and under our mode of pleading, we think that the defect, if any, was waived by the pleading over. It is one of form at best. A covenant is by all the authorities a contract under seal, *Miles vs. Sheward*, 8 *East.*, 8, *Pratt on Cov.*, 3, and what fell from Lord Hardwick and Justice Lee in the case of *Dodd vs. Atkinson*, *Hard. Cases*, 342, is applicable to a case like this. This and other cases furnish to Mr. Platt in his treatise on Covenants (p. 6) the authority for his text in these words: "So much does the word *covenant* imply a deed that there is no occasion to allege in a declaration that the deed containing the covenant was under the defendant's seal; the circumstance of sealing must be inferred, and even if it be stated that the defendant covenanted, and the instrument declared on be not sufficiently shown to be a deed, the defect is cured by pleading over."

We therefore think there was no error in the ruling of the Court below in allowing the contract to go before the jury on this ground.

The defendant then objected to the admissibility of the paper, because it had not been duly and legally stamped, and the stamp thereon cancelled, according to the provi-

sions of the Acts of Congress. It was an agreement for a lease, and bore date the 28th day of February, 1863, with a certificate thereto in these words:

"$1.00 stamp. 1865, Nov. 14th, stamped and can-
" celled, and penalty of fifty dollars paid me this day.
"FREDERICK SCHLEY, Collector."

This certificate was dated, and the stamp and penalty paid on the day of the trial, and before it was offered in evidence. The Court overruled the objection and permitted the contract to be read. The defendant excepted.

The various Acts of Congress imposing duties for internal revenue, and applicable to this case, have been examined, and all provide for restoring the validity of the paper by affixing the stamp and cancelling the same before offered in evidence. The provisions in the several Acts authorizing this to be done in the presence of the Court, are not exclusive of the provisions elsewhere in said Acts for affixing the stamp at any other place or any other prior time, unless in cases arising under the Act hereinafter mentioned. The mere authority to stamp in the presence of the Court, under the former Acts, we do not construe as the only mode of restoring validity to the instrument. In this case the Act of Congress of 1865, ch. 78, was passed on the 3d of March, 1865, pending and before the trial, and by sec. 1, (p. 481, 482, 13 U. S. Statutes at Large,) the very mode adopted in this case of paying the stamp and penalty to the Collector, and having it affixed and so noted by him on the margin of the instrument, was legalised as the proper mode in all cases of previous omission, the said section declaring that " such instrument shall thereupon be deemed and held to be as valid to all intents and purposes as if stamped when made or issued." And if the paper should not fall under the curing provision of this Act, it does under the others, and having been stamped before trial was admissible.

We therefore determine that the contract offered in evidence could not be excluded on this ground, and that the Court below did not err in admitting it : and that it was also right in rejecting the 5th, 6th and 7th prayers of the defendant in his 16th Exception, which were predicated on this objection.

This being an action for damages for a breach of a covenant for necessary repairs, we are to be governed by the law, as to what constitutes such repairs, as it was recognized and announced by this Court in the case of *Middlekauff vs. Smith*, 1 *Md. Rep.*, 340 ; and passing by for the present the plaintiff's first exception, we will proceed to examine and dispose of in their order the other exceptions of the defendant, bearing in mind the nature of the third and fourth plea, to which issues were taken, viz: that the defendant was not notified of repairs, and that he was hindered and prevented by the plaintiff from making them.

The plaintiff, proceeding in the trial, proved by several witnesses the condition of the bolting cloth, in September, 1863, also of the water wheel and elevators, and then proposed to prove by Joseph Lowe, a miller, "that in the condition of the bolting cloth, as it was when he examined it, (September, 1863,) a new bolting cloth was a necessary repair." The defendant objected, but the objection was overruled and the proof allowed. This constitutes his third exception. The order of proof is not to be observed. On the hypothesis that the defendant was notified or not prevented, the proof was admissible as showing a state for repairs after the beginning of the lease and during its continuance. If the bolting cloth was so defective and worn as not to admit of being mended by the miller as tenant, a new one became a necessary repair. The covenantor was not bound to add improvements or make additions under his covenant to repair; but he was bound to renew existing machinery, when too old

and worn to answer its purpose in the mill. If, for instance, a strap gave way and the material was too rotten and decayed to be mended, a new one to take its place became necessary as a repair. To show that a new cloth was necessary, the judgment of the witness, as a miller, was admissible. This would be proper proof, in connection with other facts, under the issues. The Court committed no error in permitting it to go in.

The fourth exception arose to the admission of proof and to the question which elicited it, by the same witness, as to the effect, in his judgment as an experienced miller, upon the quality and value per barrel of the flour manufactured in the mill *during the lease* whilst the bolting cloths were in the impaired and worn out condition as described by him, and because of the want of necessary repairs to them. The witness examined the cloths at *one point of time* during the lease, and could only speak of the difference in value between flour manufactured *then* through them, and flour run through cloths in the condition in which they should be, leaving it to the jury to apply his answer, upon the question of damages, to the state of facts arising in the case and to be proved by other witnesses. The question, as propounded, took too broad a scope, extending over the entire lease, and in this respect it was erroneous, and was properly objected to.

Solomon Gartrell, a witness for the plaintiff, met with the defendant, Cooke, at his store, in September, 1863, when Foutz and Groff had been examining the mill. Cooke asked him what they were doing at the mill. He told him they were examining it. The plaintiff's counsel then asked him, " what did Cooke say in that conversation about the mill ?" The defendant objected to it and the proof as inadmissible to prove a demand by the plaintiff on the defendant to repair the mill, and his refusal, unless the plaintiff should show that he authorized the witness to hold the conversation or to demand of

him the making of repairs to the mill. The Court over-ruled the objection. Without proof of authority, the evidence sought would be no proof of demand to repair, and if offered for that purpose would be inadmissible. But as there was evidence of some notice having been read to Cooke, in the latter part of July, 1863, the plaintiff was entitled to the benefit of any declaration by Cooke touching it, or his refusal to repair ; and whether the witness was authorized or not to hold the conversation, the declarations of Cooke to him about the mill, if relating to its repairs, or his refusal to repair, could not properly have been excluded, when asked for by the plaintiff. The Court in admitting the proof did not err. This was the 5th exception.

We think the Court was also right in refusing the question and proof under the 6th exception. The competency of James England as a miller, and at the beginning of the lease, could not enlighten the jury on the question of damages, or the issues in the case.

The testimony ruled out under the 7th exception was offered in mitigation of damages. We do not see how an offer by another to relieve the plaintiff from six months of the lease at the same rent, with other favorable terms, could legitimately bear upon the question of damages. His contract was with the defendant, and that could not be affected by propositions from other quarters, to be accepted or not, from considerations that might have no relation to the controversy. We think the ruling of the Court in this exception was correct.

The 8th exception was abandoned in the argument.

We think the Court erred in refusing the testimony of Alonzo W. Cooke, in the 9th exception, as that testimony appears to us to relate to the same time and occasion, and was properly rebutting. It was for the jury, at all events, to determine, from a comparison of the time and other circumstances, whether the notice spoken of by the different witnesses was the same and the occasion the same.

The 10th exception. Jacob Zumbrum, who had been the preceding tenant of the mill, and a miller, was asked "how long would the bolting cloths in use in said mill, when he left it and when the plaintiff took possession, have lasted and manufactured good flour, with proper care and attention on the part of the miller carrying on the mill?" The question and the evidence offered were ruled out. If the necessity of repairs were produced by the carelessness or unskilfulness of the miller, that circumstance would go to mitigate the damages. No evidence of unskilfulness had yet been offered, nor could such be fairly inferred from an opinion of an expert how long the bolting cloths might last with proper care. The question seems to have had a double aspect: that no repairs were needed, or, if needed, it was the fault of the miller; and this prospectively and by inference, from the opinion of a miller, who judged from the appearance of the cloths at the beginning of the lease. We think the proof was properly excluded.

The testimony offered under the 14th exception is of the same character and liable to the same objection, and we think was properly ruled out.

By the proof in the 11th exception the defendant sought to show the condition of the wheat and flour elevators in the mill on or about the first of April, 1863, when the plaintiff went into possession. This we think it was competent for him to do. If the defendant were notified to repair, and these were subjects for repair, it was competent to show their condition at the commencement of the lease, in order to compare it with what may have been proved afterwards, either to show no repairs were necessary, or to what extent, and to govern in the damages. We think the Court erred in excluding this proof.

We concur with the Court in its rulings on the 12th and 13th exceptions. They looked to a condition of things anterior to the lease, which had no bearing upon the issues.

We also think that the evidence offered in the 15th exception was inadmissible and for a like reason.

The 16th exception of the defendant is to the rejection of all the prayers offered by him, seventeen in number. The 5th, 6th, and 7th, have been disposed of already in considering the 2d exception.

We consider that the 2d, 10th, 11th, and 17th prayers, embrace true legal propositions in the case, and ought to have been granted.

The 12th was properly rejected, because as we conceive there was no evidence in the cause of carelessness, negligence, unskilfulness, or other like default of the plaintiff, and the prayer is based on such a state of facts. Had there been proof of such in the case the prayer would be maintainable.

The 3d, 4th, 9th, 15th, and 16th prayers were properly rejected.

The 1st, 8th, 13th, and 14th prayers present the questions of the necessity of demand for, and a specification of repairs, and also of the proper measure of damages in a case like this. We have already passed upon the requisite of a previous demand, in disposing of the second prayer. It is one of the issues in the cause; and we add here that we concur in this branch of the prayers. What is the proper measure of damages, or whether the jury, in assessing them, can embrace damages subsequent to the institution of the suit and to the date of the verdict, is a question that has produced much difficulty. The decisions upon it are collated and reviewed by Mr. Mayne in his work on the *Law of Damages*, more fully than elsewhere, and he states the result to be "that damages arising subsequent to action brought, or even to the date of the verdict, may be taken into consideration, where they are the natural and necessary result of the act complained of, and where they do not themselves constitute a new cause of action:" and "that general evidence of

matter accruing subsequent to the action may be used for the purpose of showing what was the natural and probable result of the defendant's conduct; but that particular facts are not admissible, as a specific ground of damage, to be atoned for on their own account." *Mayne on Dams.*, 33, 35. Where the act complained of, or the breach assigned, is one and complete in itself, and the damages flow naturally and necessarily from it, the jury can include all to the date of the verdict. This principle would not apply to nuisances and continued trespasses upon land. The rule of damages is at all times difficult, and every case may present features which would vary the best defined rule upon the subject. In the case now before us, there was a lease for one year, the lessor covenanting to repair; suit was instituted against him during the lease and the trial took place after the term had expired. The breach assigned was a refusal to repair. All the consequences of this refusal could be considered by the jury, those subsequent as well as those prior to the institution of the suit, thus terminating the controversy arising from the breach of the covenant assigned in the declaration. See 2 *Greenl. Ev.*, sec. 268, a.; *Shortridge vs. Lamplugh*, 2 *Ld. Raym.*, 802, 803; *Hodson vs. Stallbrass*, 9 *Car. & P.*, 63; *Ingram vs. Lawson*, 9 *Car. & P.*, 326. And as to what would be legitimate damages flowing from the act complained of and the mode of assessing them, this Court has heretofore expressed its conclusions. *Middlekauf vs. Smith*, 1 *Md. Rep.*, 341, &c. Certainty, as far as the nature of the case will admit of, is to be aimed at and ascertained. Therefore, merely speculative injuries, depending on remote, uncertain, or contingent events, afford no ground for damages.

With these views, the first, eighth, thirteenth, and fourteenth prayers of the defendant did not present the proper rule for damages in this case, and were properly rejected. And whilst in this respect the prayer of the

plaintiff was correct, it was faulty in the requisite of a demand and designation of repairs. This was one of the issues in the cause, which the jury was sworn to try and the prayer or instruction could not ignore it.

The plaintiff's first exception, in reference to the saw mill, invokes a usage in the neighborhood in the construction of the lease. This was inadmissible. The lease, as to its subject matter and terms and provisions, must speak for itself. We affirm the ruling of the Court on this exception.

The result is that the Court below erred in its rulings on the fourth, ninth, and eleventh exceptions, and in rejecting the second, tenth, eleventh, and seventeenth prayers in the sixteenth exception of the defendant. It also erred in granting the plaintiff's prayer in the defendant's seventeenth exception. The judgment must therefore be reversed and a *procedendo* awarded.

*Judgment reversed and procedendo awarded.*