ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* PLUMLEE.

Opinion delivered March 10, 1906.

1. EVIDENCE—COMPETENCY OF EXPERTS.—If a handcar is such a machine as requires expert testimony to determine what would be the effect of operating a defective car and what would be a defect in a car, a witness who had run a handcar for three years, and another who had had fifteen years' experience in operating such cars, were qualified to testify as experts. (Page 155.)

2. MASTER AND SERVANT—DUTY TO WARN SERVANT.—It was improper to charge the jury that a master should warn inexperienced servants of any danger incident to their service, in a case where there was no evidence that the master had notice of such inexperience. (Page 156.)

3. SAME—DANGERS OF WHICH SERVANT SHOULD BE WARNED.—While it is the duty of a master to warn its servants of certain kinds of defects in machinery and the danger likely to ensue from the operation thereof, it is not the duty of the master to warn its servants of all dangers that are incident to the business about which the servant may be employed, but only of those which are extraordinary or latent. (Page 156.)

4. INSTRUCTIONS—WHEN INCOMPLETENESS CURED.—Instructions which, standing alone, would be incomplete may be cured by others given by the court. (Page 156.)

5. Defective Instruction—How Objection Raised.—An instruction to the effect that it is the duty of a railroad company to furnish its employees with safe tools and appliances with which to work is defective in form, but is not ground for reversal if appellant did not ask to have it corrected by suggesting the proper qualification. (Page 156.)

6. Contributory Negligence—Abstract Instruction.—In an action against a master to recover for the negligent killing of a servant caused by a defective handcar, it was not error to refuse to instruct the jury that there could be no recovery if the handcar was defective and was being run too fast, if there was no evidence that deceased knew of the defective condition of the car, nor any evidence that it was being run too fast. (Page 157.)

7. Negligence—Evidence.—Where it was a matter of dispute whether deceased was killed by the defective condition of the wheels of a handcar, it was prejudicial error to permit plaintiff to prove that some time after the accident defendant removed the wheels in question from the handcar. (Page 157.)

Appeal from Monroe Circuit Court; *George M. Chapline,* Judge; reversed.

### STATEMENT BY THE COURT.

This was an action for damages for the alleged negligent killing of one Hopkins, who at the time of the killing was in the employ of appellant as a section hand, and working under the directions of its section foreman.

The complaint alleged that it was the duty of appellant to furnish "safe tools and appliances and a safe place to work; that under the direction of the foreman four men were sent on an errand with a handcar; that the appellee's intestate was inexperienced, having only worked on the line two months and ten days, and the handcar was unsafe and defective; that the flanges of the wheels were too short, and the wheels were not shaped in a manner to prevent them from jumping the track; that the section foreman was negligent in sending four men out with the handcar, and that by reason of the defect in the handcar it jumped the track, and injured appellee's intestate, which resulted in his death; that there was a low joint in one of the rails near where the handcar was derailed, and the handcar did not have safe brakes or attachments sufficient to prevent it from jumping the track, and it was not properly geared; that immediately after said accident appellant took off the two dangerous wheels, and replaced the same with safer and better wheels; that the plaintiff's

intestate was damaged by reason of the negligence of the appel-
lant in the sum of $2,000."

The appellant, answering, "admitted plaintiff's intestate was
in its employ as section hand at the time he was injured, but
denied he was inexperienced in the use and operation of handcars,
and alleged it was the custom to ride upon handcars while working
on the section, and that the plaintiff's intestate and three other
section men were by the foreman directed to take the car and
go on a short errand, and bring some tools with which to re-
move a tree across the road. Appellant admitted, while returning,
the car left the track and injured plaintiff's intestate, but alleged
it was on account of the excessive speed; that the handcar was
in good condition, and had been used for three months past; that
the tracks were in good condition, and the rails were set the
right distance apart, and were straight. The rapid speed of the
handcar was dangerous on account of the light load, and the de-
ceased was helping to propel the car at the time of the accident.
It denied said car was not safe, or was defective in any way,
or that the injury resulted from its negligence, or from the negli-
gence of any of its employees. It denied the wheels of the hand-
car were removed after the accident, and denied the derail-
ment was occasioned by a low joint, or that plaintiff's intestate
was not furnished with safe tools or a safe track upon which to
run said car, or that the handcar was defective in any way, and
alleged that the accident occurred on account of the high rate of
speed of the car."

There was evidence tending to show that appellant was neg-
ligent in failing to use ordinary care to furnish Hopkins
and his fellow workmen with a safe handcar with which to do
their work. There was no evidence tending to prove that Hop-
kins was guilty of contributory negligence in running the car at
a high rate of speed, and this was the only particular in which
contributory negligence was set up in the answer.

The only evidence introduced on the subject of the deceased's
experience or inexperience in the work he undertook to perform
was that he was 33 years of age, had worked as a section hand a
few times as a substitute for regular men, and on the 13th of Feb-
ruary, 1902, he became a regular hand and continued in that
capacity until injured, April 28, 1902. There was no evidence

tending to show the appellant or any employee upon whom it devolved to either instruct or warn an inexperienced servant as to dangers incident to his employment knew anything about the experience or inexperience of the deceased.

Witness Orear testified that he had been a section hand about one and one-half years. When asked .to state the defects in the car, he stated that he was no mechanic, but thought the flanges were rather small and low. Objection was made to this evidence, and it is made the second ground of the motion for a new trial.

Witness Thompson testified that he had worked as a section hand for fifteen or twenty years, had experience during this time with handcars, had taken them all to pieces and put them together again. The witness was asked this question: "If a handcar is not properly geared, and in pulling it the cogs slip or are jumped, what is liable to happen to that car in running it up and down the railroad track?" Over the objections of the defendant, witness was allowed to answer, and said: "Liable to jump the track." Witness was then asked: "Did you examine the axle?" Ans. "Yes, sir." "State whether or not it was sprung. State the condition you found the axle when you examined it." Wit-ness answered: "My opinion is it was a little sprung; now, I would not be positive, because it is on account of my eyesight, I can not see as good as I would like, to testify to anything like that." Witness was permitted to make this statement over the objections of the appellant. Witness was then asked to state whether or not in his judgment from the operation of the car there was a sprung axle. Over the objections of the appellant, witness answered, "Yes, sir."

These objections were saved in the motion for new trial.

The court gave the jury the following instructions:

"1.  The court instructs the jury that it is the duty of the master to instruct and warn his servants as to danger that is liable to occur in the carrying on of the master's business, and, further, the master should warn all inexperienced servants of any danger incident to their employment.

"2.  The court also instructs the jury that as to whether a servant is inexperienced or not, or whether the master has knowledge of his servant's inexperience, is a question of fact for the jury to decide.

"3. The court instructs the jury that it is the duty of the defendant to furnish the plaintiff, who was a section hand on defendant's road, with safe tools and appliances with which to work, and to exercise care and prudence in maintaining said appliances and tools in good repair.

"4. The court instructs the jury that, while the servant assumes all ordinary risk incident to his employment when he enters the services of his master, yet this does not include any extraordinary risk, nor does it include latent defects in the appliances used by the servant.

"5. The court instructs the jury that the risk of danger arising from the master's failure to perform his duty is not assumed by his servant.

"6. The court instructs the jury that, if they find for the plaintiff, they will consider the pain and suffering of the deceased, A. J. Hopkins, his age at the time of his death, the wages he was earning and the probable duration of his life, as proper elements of damages in this case, and give plaintiff such damages as the jury think he is entitled to under the circumstances and proof in the case."

Exceptions were duly saved to the giving of these.

The appellant asked and the court granted the following requests for instructions, viz.:

"1. The jury are instructed that if they find from the evidence that the plaintiff's intestate, having the appearance of a man twenty-five or thirty years of age, applied to the defendant for employment as a section hand for its railway, and there was nothing said at the time about his experience or inexperience in performing such work, the defendant would have a right to assume that the plaintiff's intestate was familiar with such work, and he, the plaintiff's intestate, would assume all necessary and responsible risks of accident incident to such employment.

"2. The jury are instructed that if they find from the evidence that the handcar upon which the plaintiff's intestate was working was derailed or jumped the track on account of or by reason of said intestate and his companions pumping upon the rear lever with such force as to cause the same to jump the track or become derailed, then your verdict must be for the defendant.

"3. The jury are instructed that if they find from the evi-

dence that the handcar upon which the plaintiff's intestate was injured was defective, and such defects were known, or could have been known, to the plaintiff's intestate by the use of ordinary care, and he continued in the employment and the use of the handcar, he assumed the risk incident to such defects, and your verdict should be for the defendant.

"4. If the jury believe from the evidence that Hopkins was not in charge of the handcar, but the same was run by other section men, and they ran the car faster than in the exercise of ordinary care they should have run the car, and by reason of such fast running the car jumped the track, causing the death of Hopkins, then plaintiff can not recover, and your verdict must be for the defendant.

"5. If the jury believe from the evidence that Hopkins was not in charge of the handcar, but the same was run by other section men, and they ran the car faster than in the exercise of ordinary care they should have run the car, and by reason of such running the car jumped the track, causing the death of Hopkins, and at the same time the car would not have jumped the track but for the defects therein, which were known, or by the exercise of his powers of seeing and hearing could have been seen or noticed by Hopkins, plaintiff can not recover, and your verdict must be for the defendant.

"8. If the defect in the handcar spoken of by the witnesses were easily and readily seen or noticed by Hopkins, and Hopkins was accustomed to use the handcar in that condition, and with such knowledge of the defects, or if by the use of ordinary care he could have noticed such defects which were patent and not concealed under such circumstances, and in consequence of such defects Hopkins was injured and died from such injuries, plaintiff can not recover, and you will find for the defendant.

"9. If the jury find from the evidence that the defendant railroad was negligent in that it failed to exercise such care as the law requires of it in respect to furnishing the handcar with which A. J. Hopkins was required to work, as explained in other instructions, yet if the jury also find from the evidence that the handcar, while being operated by the deceased and other section men, was run so fast that it became more dangerous than if it had been run with ordinary care and speed, and such running

of the handcar was careless and negligent, and such fast, careless and negligent running of the handcar, co-operating with the defects in said car, caused the same to jump the track, whereby Hopkins was killed, then plaintiff can not recover, and the jury will find for the defendant.

"10. The court instructs the jury that it was the duty of Hopkins to notice all defects in the car which his eyesight would have discovered, and the court tells you that a flat wheel on a handcar is an obvious defect, such as he was bound to notice by the exercise of ordinary care, and the defect, if there was such a defect, was obvious, and Hopkins is presumed to have seen it and known of its existence, and, there being no evidence to show he did not know of its existence, you will treat this case as though he did know of it; and if, knowing such defect, he went on with his work and used such car in its defective condition, he is held in law to have assumed the risk of danger of so using it, and if you find that he sustained his injuries because of such defect, in connection with the fact that the car was run faster than with due regard for his safety it should have been run, then the plaintiff can not recover, and you will find for the defendant.

"11. The court instructs the jury that it was not the duty of the railroad to see that Hopkins actually knew of the alleged defect in the handcar, but it had a right to rest upon a probability that section men using the handcar would notice defects that were obvious and apparent to the eyes; and if Hopkins was injured because of such defect, his administrator can not recover for such an injury, and your verdict must be for the defendant.

"12. The court instructs the jury that if the jury find from the evidence that the handcar described by the witnesses was defective in respect to a flat wheel, or because there was such play in the wheels as to cause it to wobble on the track, and such defect caused the handcar to jump the track while running at a rapid rate of speed, whereby the deceased section hand, Hopkins, sustained such injuries as caused his death, yet if the defects in the wheel were open to his observation, or, as the law calls it, such defects were patent, and with such knowledge of the defects referred to Hopkins went on the handcar in discharge of his duties, and was injured by reason of such defects as already mentioned, then he assumed the risk of any accident that would naturally re-

sult from such defects, and plaintiff can not recover, and the jury will find for the defendant; and if you find from the evidence that the defects referred to were patent or open to Hopkins' observation, then it is the same as if Hopkins had seen the same, for he is held to have seen all that by the exercise of ordinary care he could have seen."

And the court refused the following prayers:

"6. If the jury find from the evidence that one of the wheels of the handcar was defective by being what the witness calls 'flat,' or because it wobbled on the track by reason of having too much play, and such a defect exposed Hopkins, using said car, to the possibility of injury, and, by running the car faster than same should have been run had they been exercising ordinary care or had not been careless or negligent, the car jumped the track, and Hopkins sustained the injuries resulting in his death, the plaintiff can not recover, and you will find for the defendant.

"7. The court instructs the jury upon the evidence to return a verdict for the defendant."

Exceptions were duly saved to the ruling of the court in refusing these.

Other facts will be stated in the opinion. The verdict and judgment were for $2,000.

*S. H. West* and *J. C. Hawthorne,* for appellant.

The law does not require the master to warn an inexperienced servant of danger attending the discharge of his duties, unless experience is necessary to enable him to discharge his duties with safety, and the servant was in fact inexperienced, and the master knew it or ought to have known it from his age and conduct. 58 Ark. 217; *Ib.,* 168; 71 Ark. 55; 71 Wis. 114; 33 Am. & Eng. R. Cas. and note, 274; 76 Ark. 69; 39 Ark. 17; 56 Ark. 206; 56 Ark. 238; 46 Ark. 388; 40 N. E. 180; 26 S. W. 590; 50 Fed. 725. Without evidence to show that deceased was inexperienced, or that the defendant knew, or ought to have known, that he was inexperienced, it was error to submit that question to the jury. 14 Ark. 530; 42 Ark. 57; 41 Ark. 282. The duty of the master is discharged if it exercises ordinary care, even though the machinery and appliances furnished be not in fact safe or free from defects. 46 Ark. 555; 48 Ark. 333;

35 Ark. 602; 44 Ark. 525; 49 Ark. 98; 4 Am. & Eng. R. Cas.,
new series, 273; 135 U. S. 554; 5 Am. & Eng. R. Cas. 474; 100
N. Y. 266. The servant assumes the risk of latent defects un-
known to the master, unless the master was negligent. Whether
they were discoverable is for the jury. 5 Am. & Eng. R. Cas.
480 and notes; 15 *Id.* 230; 39 N. Y. 468; 76 N. Y. 125; 56 Ark.
206; 117 Mass. 407. If deceased knew, or by use of ordinary
care could have known of defects, plaintiff can not recover, not-
withstanding the master's failure. 1 Am. & Eng. R. Cas. 107;
2 *Id.* 144; 2 *Id.* 159; 3 Dill. 317.

2. Witnesses Orear and Thompson not having qualified as
experts, it was error to allow them to express opinions as to
result of operating a handcar with defects. 56 Ark. 612; 36
Ark. 117; 49 L. R. A. 33.

3. It was error to admit testimony as to removal of wheels
from the handcar after the accident. 70 Ark. 179; 8 Am. & Eng.
R. Cas. 464; 11 *Id.* 168; 16 *Id.* 342.

*H. A. & J. R. Parker,* for appellee.

1. If the servant is inexperienced in running a dangerous
machine, it is the master's duty to warn him. Whether or not
he was inexperienced is a question of fact for the jury. 71 Ark.
55; 39 Ark. 17; 56 Ark. 206; 18 S. E. 360.

2. Errors in instructions, if any, were cured by instructions
given at the request of defendant.

3. If it was essential that witnesses Orear and Thompson
testify as experts, there was no error in admitting their opinions.
The record shows they were qualified.

4. Testimony as to removal of wheels after the accident
was admissible as a circumstance to show whether or not there
were any defects in the wheels.

WOOD, J., (after stating the facts.) 1. Appellant's counsel
contend that witnesses Orear and Thompson were not competent
to give an opinion that any particular condition of the handcar
was a defect, nor as to what would be the result of operating
a handcar with defects, until they had qualified themselves as ex-
perts.

Conceding, as this does, that a handcar is such a machine as
requires expert testimony to determine what would be the effect

of operating a defective one and what would be a defect in any particular condition of the car, we must say that the witnesses, in our opinion, have sufficiently qualified themselves to give expert testimony. The record does not warrant the conclusion that a handcar was such a complicated machine that great length of time employed in the use and operation thereof was necessary in order to enable one to understand its various parts, whether they were defective or not, and what would be the consequences of the operation of a defective one. Orear had run a handcar "off and on" for about three years, and Thompson had about fifteen or twenty years' experience in operating cars. He could take one to pieces, and put it together again. We very much doubt whether any peculiar skill, or special habits of study, or any unusual knowledge was necessary in order to master the details of handcar machinery and its operation. But, if so, then Orear and Thompson showed sufficient familiarity and knowledge of the subject-matter to entitle them to testify as experts, and their testimony was properly admitted.

2. Instructions one and two given by the court were abstract, and moreover were not accurate statements of the law upon the subjects intended to be covered by them. If it was a question of fact as to whether or not Hopkins was inexperienced, there was no evidence whatever that appellant had notice or knowledge of such inexperience. And while it is the duty of the master to warn its servants of certain kinds of defects in machinery and the danger likely to ensue from the operation thereof, it is not the duty of the master to warn its servants of all dangers that are incident to the business about which the servant may be employed, as the first instruction might be construed to mean. But these instructions, when taken in connection with instruction number four and with instructions given at request of appellant, especially those numbered one, three, eight, ten, eleven and twelve, could not have been prejudicial, for the whole matter covered by instructions one and two given by the court and the particulars wherein they needed explanation were covered fully by other instructions given, and that too in a more favorable light in some respects than appellant had the right to demand.

Instruction number three given by the court was defective in form, but appellant did not ask to have it corrected by suggest-

ing the proper qualification. The exact point covered by this instruction is ruled by *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255.

The court did not err in refusing instruction number six asked by appellant. The instruction was abstract and misleading. Besides, it leaves out all knowledge on the part of Hopkins of the defects mentioned and the danger to be anticipated in the use of such defective machinery. There was no evidence that the handcar was run too fast.

The court properly refused to give an instruction directing a verdict for appellant. The case was one for the jury upon proper instructions, and there is nothing in the ruling of the court in giving or refusing instructions of which appellant can complain.

We need not again discuss the doctrines of assumed risks and contributory negligence presented by some of the charges, for the whole subject has been gone over exhaustively by us in the recent case of *C., O. & G. R. Co.* v. *Jones,* 77 Ark. 367. Nothing remains except to apply these principles to the facts of each case as they arise where these questions are involved. In addition to the authorities cited by Judge Riddick, I wish to refer, for the benefit of those who may be interested in investigating these subjects further, to the case of *Limberg* v. *Glenwood Lumber Co.,* 49 L. R. A. 33, and the elaborate notes thereto.

3. The twelfth ground of the motion for new trial is: The court erred in refusing to exclude from the consideration of the jury the evidence of Sam Thompson, R. J. McKay and R. L. Orear as to placing or replacing wheels on the handcar after the time of the accident. Over the objection of appellant, witness McKay was permitted to testify that the rear wheels of the handcar were taken off some time after the accident, but he could not tell how long, whether three weeks or a month. Witness Thompson was asked to state to the jury how came the change to be made, and over objection of appellant answered: "I suppose it to be for safety." He was then asked: "The other wheels were not considered safe by the men who ordered them off?" and over objection was allowed to answer, "No." Exceptions were properly saved. Motion was made to strike out this testimony, and the bill of exceptions shows that "the court overruled the

motion to strike out the testimony of Orear and Thompson in reference to change of the wheels made on the handcar, and permitted the testimony to go to the jury, but not for the purpose of establishing conclusively that the change was made on account of defects, but it might be considered by the jury, together with all other circumstances." Such testimony was incompetent, as was recently ruled by this court in *Prescott & Northern Ry. Co.* v. *Smith,* 70 Ark. 179. It was prejudicial, for it can not be said that the evidence, apart from this, conclusively established the negligence of appellant.

The question was for the jury. The evidence was conflicting as to whether or not there were defects in the handcar which appellant knew or by the exercise of ordinary care should have known.

For the error in admitting this testimony and refusing on motion afterwards to exclude it, the judgment is reversed, and cause remanded for new trial.