BODCAW LUMBER COMPANY *v.* FORD.

Opinion delivered April 29, 1907.

1. MASTER AND SERVANT—FAILURE TO WARN SERVANT.—Where an inexperienced servant was put to work at a machine, and was injured, either because the machine was defective, or because he was not instructed how to operate it properly, the master was negligent and liable for the resulting injuries. (Page 558.)

2. EVIDENCE—IMPROPER QUESTION—HARMLESS ERROR.—Appellant can not complain that an improper question was asked a witness, if he answered the question in the negative, and it appears that no prejudice to appellant resulted. (Page 559.)

3. TRIAL—PROPER ARGUMENT.—It was not error to permit appellee's counsel to refer to the machine which injured appellee's intestate as an "old rattletrap of a machine," if there was evidence that the machine was badly out of repair. (Page 560.)

4. SAME—GENERAL OBJECTION TO EVIDENCE.—A general objection is insufficient to call the court's attention to the fact that evidence admissible for one purpose was inadmissible for another; the court should have been asked to instruct the jury for what purpose the evidence was competent and for what purpose incompetent. (Page 560.)

5. MASTER AND SERVANT—NEGLIGENCE—SUBSEQUENT REPAIRS AS EVIDENCE. —In an action against a master for the negligent killing of a servant,

it was inadmissible to prove that after the killing the master 're-paired the machine which caused the death. (Page 561.)

6. SAME—INSTRUCTION—GENERAL OBJECTION.—Where, in an action on be-half of intestate's father as next of kin to recover for the neg-ligent killing of a minor, the jury were told that they might include as damages "such sum as would fairly compensate the father for the loss of the son's wages from the date of his injury until he would have reached his majority," a general objection was insuffi-cient to call attention to the fact that the instruction was too broad and that it should have limited recovery to the net earnings of the son after deduction of his expenses of living. (Page 561.)

Appeal from LaFayette Circuit Court; *Charles W. Smith,* Judge; affirmed.

*Moore & Moore* and *Webber & Webber,* for appellant.

1. There was error in permitting counsel to ask a witness on direct examination the question, "Did you not ask Lee Howell, 'Why did you put a green man to work at that old rattletrap of a machine?'" 61 Ark. 52; 52 Ark. 78; 57 Ark. 287; 66 Ark. 494; 78 Ark. 381.

That the court cautions the jury not to consider incompetent evidence does not cure the error of permitting it to be introduced. 60 Ark. 76. Prior inconsistent statements as to a matter col-lateral to the issue are inadmissible. The test is, could the fact as to which the inconsistency is predicated have been shown in evidence by other witnesses, independently of the inconsis-tency? I Greenleaf, Ev. 16 Ed., 461f; 34 Ark. 485; 52 Ark. 308; 72 Ark. 411; 58 Ark. 129; 52 Ark. 78; 48 Ark. 473; 57 Ark. 297; 78 Ark. 381; 77 Ark. 431.

2. There were improper and prejudicial statements in the argument of plaintiff's counsel to the jury. 70 Ark. 308; 74 Ark. 256; *Id.* 298; 63 Cent. Law Jour. No. 21, p. 398.

3. Evidence of repairs to machinery after the happening of an accident and injury is incompetent, and should not be admitted 70 Ark. 183; 78 Ark. 147; 79 Ark. 388; 144 U. S. 202.

4. Plaintiff's first instruction is ambiguous. Instructions that are mere statements of legal propositions, not purporting to apply to any supposed state of facts made by the evidence, ought not to be given. 14 Ark. 537; 71 Ark. 524. It is not the duty of the master to warn an inexperienced servant of dangers liable to be encountered by him in the performance of his duties

where experience and instruction are not necessary to enable him to do with safety the work he is employed or required to perform.   73 Ark. 55. See also, 41 Ark. 391; 58 Ark. 228; 70 Ark. 142; *Id.* 443.

The court's instruction as to the measure of damages was too broad, allowing the jury to find for the father the entire prospective wages of the son from the time of the injury to his reaching majority, without deducting the reasonable and necessary expense of rearing him to his majority.   36 Ark. 41.

5.   The verdict is excessive, the evidence as to loss of services, present and future, being vague, inconsistent and contradictory.   77 Ark. 405.

6.   The verdict is contrary to the evidence.   Deceased was not directed to feed the machine but to "off bear," and that work was not dangerous and required no experience.   Undertaking to do work to which he was not assigned, deceased was a mere volunteer, and assumed the risk.   19 Atl. 504; 66 S. W. 501; 61 S. W. 447; 47 Atl. 1017; 2 Bailey's Per. Inj. § § 3518 *et seq;* 2 Labatt on M. & S. § 633 and note; *Id.* § § 634 and 636; 22 L. R. A. 663; 22 S. E. 273; 48 N. W. 824; 56 N. W. 465. The doctrine of a known violation of rules acquiesced in by the master abrogating the rules has no application.   A custom must yield to subsequent directions in conflict with it.   56 N. W. 465.

*Warren & Hamiter* and *Smead & Powell,* for appellee.

1.   The question with reference to the "old rattletrap of a machine" was not objected to as asked, and the answer was favorable to appellant.   It was admissible to introduce the testimony of R. S. Coleman, a witness who had testified at a former trial, his testimony being taken down by the official stenographer, as he had left the State and could not be produced. I Greenleaf, Ev. 5 Ed. § 162 *et seq.*

2.   Appellant, having brought out the testimony as to the fact of the machinery being repaired after the accident, is in no position to object here.

3.   The evidence was ample to support a verdict for a much larger sum that the jury awarded.   For measure of damages, see 55 Ark. 462.

4. Appellant failed to warn deceased of the danger to which he was exposed, and is liable. 83 S. W. 346; 53 Ark. 128; 56 Ark. 210; *Id.* 232.

McCULLOCH, J. This is the same case which was here on former appeal and reported in 73 Ark. p. 49 (*Ford* v. *Bodcaw Lumber Company*). The judgment was reversed for error in an instruction given at the instance of the defendant, and on a trial anew in the circuit court the plaintiff recovered judgment for $1,500, and the defendant appealed. The facts are stated, in substance, in the former opinion.

Appellant questions the sufficiency of the evidence to sustain the verdict, but we conclude that there was enough evidence to justify a finding that the defendant was guilty of negligence in permitting Ford, the plaintiff's intestate, an inexperienced youth, to go to work feeding the edging machine without instructing him as to the danger, and in permitting the machine to get out of repair.

He had been working for defendant a short time, and was put to work at the edger the day before the injury to offbear or carry away the lumber after it passed through the machine. He was instructed as to these duties and in a general way as to the danger of getting too near the machine while in operation. On the morning of the injury two other men were operating the machine, one feeding and the other offbearing, and he was directed by the foreman and vice-principal to go to work at the edger; the precise language of the foreman being, according to the testimony of one witness, to "go behind the edger." This witness explained that the direction to go behind the edger meant to go either to the feeding end or the offbearing end, according to which place was at the time vacant. It was also proved that it was the custom at the mill for the "truckers," that is, the two men at the edger, to feed or offbear, as they chose.

At the time Ford was sent to work at the machine, Brown and Fuller, two other employees, were running the edger, Brown feeding and Fuller offbearing. When Ford reached the machine, Brown had left it temporarily, and had gone to another part of the building or shed to get a bench, and he (Ford) told Fuller that the foreman had sent him to take his (Fuller's) place, and directed the latter to go to the foreman. As soon as Fuller

left the machine, and, before Brown returned, Ford attempted to feed the edger, was struck by a board or plank which was violently thrown back from the edger, and was killed. This testimony as to the directions given to Ford was contradicted by the foreman, who testified that he directed Ford to offbear from the machine and not to feed; but, in order to test the sufficiency of the evidence, we must consider it in the most favorable light to the plaintiff's case, as the jury found in his favor.

Now, if the custom prevailed generally among the employees of the mill for the truckers to work at either end of the edger, we must assume that both the foreman and the employees knew of its existence; and if the foreman sent Ford to work at the edger at a time when no one was feeding, it was the duty of the defendant either to warn him not to feed the edger or to instruct him as to how he should operate the machine so as to avoid the danger incident to the work. The injury was caused either by reason of a defect in the machine or by Ford's failure to properly operate it, and in either event the defendant is liable if it failed to warn him. Being an inexperienced youth, uninformed as to proper method of operating the machine, he was entitled to instruction as to the safe method of operating it and warning of the danger ordinarily incident to the work or from any defect in the machine.

The jury were therefore warranted in finding that, under the circumstances, it was the duty of the defendant either to instruct him or to warn him not to attempt to feed the machine, and that it did neither of these things, but sent him to work there without proper warning or instruction.

This court said in the former opinion in this case that "in all cases where there is a duty to warn a servant, it would be a breach of such duty to expose him to such dangers without giving him such instructions and caution as would, in the judgment of men of ordinary minds, understanding and prudence, be sufficient to enable him to appreciate the dangers and the necessity for the exercise of due care and caution, and to do the work safely, so far as can be done, with proper care on his part."

The plaintiff introduced as a witness W. C. Brown, vice-president of appellant company and superintendent of machinery, and in the course of his examination asked him the question,

"Did you not ask Howell, the foreman, 'Why did you put a green man to work at that old rattletrap of a machine?'" which question the witness answered in the negative. The defendant made objection to the question and saved exceptions. When the witness answered in the negative, the question was not pressed further, and no effort was made to contradict the witness by proving that he made the alleged statement to Howell. We see nothing prejudicial in the question, since it was answered in the negative. Though the question was improper, the answer removed all prejudice. Of course, we can imagine a case where an improper question might be repeated often enough to become prejudicial, even though each time it elicited a negative answer. But that was not done in this case. It was not repeated at all, and appears to have been entirely abandoned when the witness denied having had the alleged conversation with Howell.

Learned counsel for appellant contend that the question was made prejudicial, notwithstanding the negative answer, by appellee's attorney referring in his argument to the edger as "that old rattletrap of a machine." There was proof that the edger was defective and out of repair, and this warranted counsel for appellee in using the language, though it was a somewhat extravagant chacterization of the machine. According to the plaintiff's theory of the case and evidence introduced, the machine was badly out of repair, and his counsel were justified in arguing that point before the jury. We do not think the argument exceeded the proper bounds.

The plaintiff was permitted to prove by witness Coleman, over defendant's objection, that a short while before the accident he said to H. R. Preston, the foreman of the planing mill, that "somebody is going to be killed at that edger," and that Preston replied: "I reckon not; there has not been anybody killed; and if it does, I guess it will be a negro; and if it does, we have plenty of them to spare." It was competent to prove the statement of Coleman to Preston, the foreman of the planing mill, who was a vice-principal, and stood in the place of the defendant, for the purpose of showing that defendant had notice of the defective condition of the machinery. Preston's reply tended to show that he understood and appreciated the information, and for that pur-

pose alone it was competent. It further tended to show that he was indifferent to results, and was disposed to disregard the notice, and it was improper for the jury to consider it in this respect; but if the defendant feared an unfavorable effect upon the jury in this regard, an instruction should have been asked telling them that they should consider the statement only for the purpose of ascertaining whether or not the defendant received notice of the alleged defects in the machine. A general objection to the statement, it being competent for one purpose, was not the appropriate method for calling the court's attention to the harmful effect it might improperly have upon the minds of the jury in another respect.

Another assignment of error made by appellant is that the plaintiff was allowed to prove that appellant repaired the edger after the accident. It is settled that such proof is incompetent. *Prescott & Northern Railway Co.* v. *Smith,* 70 Ark. 183; *St. Louis S. W. Railway Co.* v. *Plumlee,* 78 Ark. 147; *Fort Smith L. & T. Co.* v. *Soard,* 79 Ark. 388. But proof of this fact came out incidentally in the testimony of witnesses introduced by each party to prove examinations of the machine after the accident for the purpose of ascertaining its condition, proof of the repairs being made only for the purpose of fixing the time of the examination. No specific objection was made to that part of the evidence, and we do not think that, under the circumstances, the appellant is in any attitude to complain. It should have asked specifically that the proof of repairs made subsequent to the injury be excluded from the jury, or that they be told not to consider it for the purpose of determining whether or not defendant was negligent in failing to repair the machine before the injury.

Exceptions were saved to the giving of the instruction asked by plaintiff as to the measure of damages wherein the jury were told that they might include "such sum as would fairly compensate the father for the loss of the son's wages from the date of his injury until he would have reached his majority." It is argued that this instruction permitted the jury to allow the father the entire prospective wages of the son, without deducting anything for his expenses. The instruction is too general in this respect, and should have specifically limited the recovery to

the net earnings of the son after deduction of expenses of living; but we think it is fairly susceptible of that meaning, and we can not believe that it had any. mischievous or misleading effect upon the jury. If such effect was feared by appellant, it should have directly called the attention of the court to that particular feature of the instruction, or asked an instruction telling the jury to deduct the expenses of the son from his earnings.

Objection is raised to other instructions given at the instance of the plaintiff, but we find no error in them. The first instruction given at plaintiff's request contains a formal defect, but it was not prejudicial. The case went to the jury upon instructions prepared by counsel for appellant upon the questions of negligence, contributory negligence and assumption of risk which were raised by the pleadings and testimony. Taken as a whole, the instructions properly and concisely put all the issues before the jury, and there is no error to be found in the record.

Appellant also urges that the assessment of damages is excessive, but after careful consideration we conclude that the evidence warranted the assessment of the amount fixed by the jury.

Judgment affirmed.