St. Louis, Iron Mountain & Southern Railway Company *v.* Walker.

Opinion delivered March 1, 1909.

1. RAILROADS—OVERFLOWS—EVIDENCE OF NEGLIGENCE.—The fact that, after an overflow alleged to have been caused by the failure of a railway company to provide sufficient openings in its roadbed for certain nat-

ural streams, the company enlarged the openings provided therefor is not competent to show that it was previously negligent in not providing sufficient openings.  (Page 560.)

2.  APPEAL AND ERROR—PRESUMPTION OF PREJUDICE.—When incompetent evidence is introduced, prejudice is presumed, and the burden is on the party introducing it to show that no prejudice resulted.  (Page 563.)

3.  RAILROADS—EMBANKMENT—DUTY TO FURNISH OPENINGS.—In constructing its roadbed across a stream, it is the duty of a railway company to furnish sufficient outlets for the flow of the waters of such stream, whether at ordinary stage or during floods which could reasonably have been foreseen, but not during floods of such extraordinary character that they could not reasonably have been anticipated.  (Page 563.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellee, A. V. Walker, as administrator of the estate of J. R. Jones, sued appellant, alleging in substance as follows:

That in the year 1902 the defendant company owned and operated and now owns and operates a line of railway on and through the plaintiff's farm. That the Terre Rouge Creek, a stream called Dry Creek, and a slough run through said farm. That in the year 1902 plaintiff had in cultivation on said farm fifty-five (55) acres of crop, forty-one (41) acres north and fourteen (14) acres south of defendant's line of railway. That defendant's line of railway crosses said streams on said farm, and that its embankment there is several feet high. That defendant carelessly and negligently erected its said embankment without sufficient openings in same to allow the water that naturally accumulates in said streams and upon said farm, north of said embankment, to flow off naturally and pass away; that it negligently failed to leave any openings at all where its embankment is built across said Dry Creek and said slough, and thereby wrongfully and negligently obstructed the natural flow of water in said streams; that, by means of said embankment across said streams without openings and ditches dug by it, the defendant wrongfully and negligently diverted the water from said streams over and across plaintiff's farm into said Terre Rouge Creek, north of said embankment, thereby causing said farm to overflow; that it left a small, but insufficient, opening where said rail-

way crosses said Terre Rouge Creek, but at said point defendant negligently threw large timbers and dirt and suffered logs and drift wood to accumulate in said creek, after changing the bed of said creek at said place, and thereby negligently obstructed the natural flow of water in said Terre Rouge Creek; that on the ...... day of July, 1902, defendant's wrongful and negligent erection and maintenance of its said embankment without sufficient openings and the wrongful and negligent diverting of water from said Dry Creek and slough over and across plaintiff's farm into said Terre Rouge Creek by defendant and defendant's wrongful and negligent filling up of said Terre Rouge Creek obstructed the natural flow of water in said streams and backed same upon said farm and cotton north of said embankment, and held same there for several days, and said forty-one acres of cotton north of said embankment were thereby overflowed and destroyed; that said cotton would not have been overflowed and destroyed had it not been for the said wrongful and negligent acts of defendant, and said wrongful and negligent acts of defendant directly caused the overflow and destruction of said cotton; that said cotton had been cultivated well, and when destroyed was in a good, healthy and flourishing condition and worth one thousand and twenty-five dollars.

The plaintiff, further complaining of the defendant, says that because of the said wrongful and negligent acts of the defendant in and about the erection and maintenance of said embankment, which have been hereinbefore fully described, the natural flow of water in said stream was wrongfully and negligently obstructed, and on the said ...... day of July, 1902, a large body of water was accumulated on said farm, north of said embankment, and held there for several days; that the only outlet for said water was the said small and insufficient opening left by defendant at Terre Rouge Creek; that said water, in passing through said opening, moved with such great force and at such a great velocity that it caused a swift current in the water as it passed over plaintiff's farm and cotton, south of said embankment, which beat down, washed away and destroyed plaintiff's said fourteen (14) acres of cotton, south of said embankment; that, had it not been for the wrongful and negligent acts of defendant the natural flow of water in said stream would not have been ob-

structed, and said body of water would not have been accumulated on said farm, north of said embankment; that the water that accumulated in said creek and upon said farm, north of said embankment, would not, in passing away, have moved with great force or at a great velocity, and would not have formed a swift current, and would not have beaten down, washed away and destroyed said fourteen acres of cotton, and, had it not been for said wrongful and negligent acts of said defendant, all water that accumulated in said creeks and upon said farm north and south of said embankment would have naturally flowed off and passed away without damage to the plaintiff; that said cotton south of said embankment had been cultivated well, and when destroyed was in good and healthy condition and worth three hundred and fifty dollars; that all of said cotton destroyed north and south of said embankment, by the said wrongful and negligent acts of the defendant, was worth thirteen hundred and seventy-five dollars; and so the wrongful and negligent acts of defendant have damaged the plaintiff said sum of thirteen hundred and seventy-five dollars.

The answer denies specifically each and every allegation of the complaint, and as an additional defense states that the defendant's roadbed and embankment, as it is now and as it was at the time of the alleged overflow, was built more than five years before the alleged overflow. That it had been for many years maintained in its present condition. That if plaintiff had any cause for action it arose more than three years prior to the damage complained of, and that same is barred by the statute of limitations; and further it is alleged that plaintiff planted and cultivated his crop with the knowledge of the condition of the creek and with the knowledge that it would overflow, and took the chances and assumed the risk of his crop being washed away. And it further alleges that Terre Rouge Creek and the slough and Dry Creek mentioned in plaintiff's complaint overflowed independently of defendant's embankment, and that his crops would have been destroyed had there been no embankment. That defendant's railroad and embankment were built by skilled engineers, and the work was done with due caution and circumspection, and that it has not been guilty of any negligence or damage to plaintiff in any way.

A similar complaint was filed by appellee Holt, alleging that he was a tenant on the Jones farm during the year 1902, and had a crop of cotton consisting of 12 acres situated south of the line of appellant's railway. The complaint then alleged negligence the same as in the Jones case and the total destruction of his crop thereby, to his damage in the sum of three hundred dollars, for which he prayed judgment.

The answer set up the same defenses as in the Jones case. The cases were consolidated and tried with a jury who returned a verdict in favor of the Jones estate for $400, and in favor of Holt for $120. Judgment was entered accordingly, and this appeal duly prosecuted.

*E. B. Kinsworthy* and *Lewis Rhoton,* for appellant.

1. Evidence to show that since the time of the overflow the appellant had made the opening at the creek larger was inadmissible. 8 Enc. of Ev. 914; 3 Elliott on Railways, § 1177; 21 Am. & Eng. Enc. of L. 521; 70 Ark. 179.

2. The third instruction given at appellee's request errs in assuming the facts not in evidence, in making it the company's duty to guard against all overflows, whether ordinary or extraordinary, and in requiring it to so construct the embankment as to let the water, in time of overflow, pass off in the same manner as they would have passed off before the embankment was built. 57 Ark. 387.

*James H. McCollum,* for appellees.

Wood, J., (after stating the facts). First. There was evidence to sustain the allegations of the complaints, and the verdicts were not excessive.

Second. Appellees asked a witness the following question:

Q. "I want you to state whether or not the railroad company, any time since 1902, has made that trestle larger?"

Appellant objected to the question. Thereupon counsel for appellees said: "I offer to make this proof to show that the opening at the creek was smaller than it is now, and for that purpose only."

The court overruled appellant's objection, and permitted the witness to answer as follows:

" A. Yes, sir. * * * A good deal. I don't know exactly, I have never measured it, but it is about the length of a sill. * * * Somewhere about sixteen feet. * * * There was a wreck there in 1903, and they built a longer trestle."

The appellant excepted to the ruling of the court. This court in *St. Louis Southwestern Ry. Co.* v. *Plumlee,* 78 Ark. 147. held (quoting syllabus) that "where it was matter of dispute whether the deceased was killed by the defective condition of the wheels of a hand car, it was prejudical error to permit plaintiff to prove that sometime after the accident defendant removed the wheels in question from the hand car."

The following rule laid down in 8 Enc. Ev. at page 914 is sustained by numerous authorities: "Evidence of alterations, repairs or additional safeguards after the accident is not ordinarily competent, either to show the defective condition at the time of the accident or for other purposes. Even when such evidence is put in by the defendant, it cannot be considered by the jury in determining whether or not the thing was in a defective condition at the time of the accident. For such evidence has no legitimate tendency to show unsafeness before the accident; and thus it is irrelevant, for the reason that the change may as well have been prompted by information gained from the accident as information with which the defendant was chargeable previously, and accordingly the exercise of greater care after the accident does not reasonably tend to show a want of previous due care." See cases cited in note and among them *Prescott & N. W. Ry. Co.* v. *Smith,* 70 Ark. 179, where Judge RIDDICK, speaking for the court, recognized and approved the doctrine in a quotation from *Morse* v. *Minneapolis & St. L. Ry. Co.,* 30 Minn. 468, as follows:

"A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely he would be to do so; and it would seem to be unjust that he could not do so without being liable to have such act construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct,

and virtually holds out an inducement to continued negligence." *Morse* v. *Minneapolis & St. L. Ry. Co.,* 30 Minn. 468."

In the case of *Prescott & N. W. Ry. Co.* v. *Smith, supra,* we held that the admission of such evidence was error, but found it was not prejudicial error in that case for the reason that the negligence of the railway company was conclusively established by other evidence.

In the case at bar it cannot be said that the negligence of appellant was conclusively established by other evidence, and that therefore the objectionable evidence did not work any prejudice to appellant. The announcement by counsel for appellee, at the time the testimony was offered, that the sole purpose was to show that the opening of the creek was smaller at the time of the injury than at the time of the trial did not make the testimony competent for the purpose avowed. The court did not tell, and was not asked to tell, the jury that the evidence could only be considered to determine the width of the opening at the time of the overflow. The width of the opening at the time of the overflow was not in dispute, and the width of the opening at the time of the trial, or after the overflow, was not in issue at all. The very fact "that the opening of the creek was smaller in 1902 than now" at the time of the trial, because appellant had enlarged it since the accident, was the fact that contravened the rule announced, and was the fact that, under the rules could not be proved. It was proper to show what the width of opening was at the time of the overflow. But such fact could only be established by competent testimony.

In the case of *Bodcaw Lumber Co.* v. *Ford,* 82 Ark. 555, at page 561, the court declared the rule as here announced, but held that the incompetent evidence elicited there "came out incidentally in the testimony of witnesses introduced by each party" to show the condition of the machine at the time of the accident. There they were seeking to prove directly the condition of the machine at the time of the accident, and not that there had been alterations and repairs made after the accident. But here they were seeking to show " that *the opening of the creek was smaller in 1902 than now."* In other words, the fact that the testimony tended directly to establish in this case was that since the injury the appellant had built a longer trestle;

as the witness answered, "somewhere about sixteen feet" longer.

Appellee relies upon the case of *Bodcaw Lumber Co.* v. *Ford, supra,* to sustain his contention that the testimony set out above was not prejudicial error. But we are of the opinion that there is a clear distinction, between that case and this ·on the point under consideration.

"When incompetent evidence is introduced, prejudice is presumed, and the burden is on the party introducing it to show that no prejudice resulted." *St. Louis, I. M. & S. Ry. Co.* v. *Courtney,* 77 Ark. 431.

Third. The instructions given at the instance of appellant, were certainly as favorable to it as it could ask, and the court did not err in its ruling upon the prayers refused.

Fourth. In view of a new trial, should the evidence warrant the court in submitting the question as to' whether the overflow of 1902 was of such extraordinary character as that it could not have been reasonably anticipated and guarded against by the exercise of ordinary care, then the court should make its instructions on this phase of the case harmonious. The court in some of its instructions presented this idea, as in those numbered two, seven and ten given at the instance of appellant and one and two asked by appellees. But in instructions numbered three and four given at the request of appellees this idea was not presented, and therefore the instructions covering this particular phase of the case might be construed as conflicting.

The charge should conform to the law as announced in *Railway Company* v. *Cook,* 57 Ark. 387, and should constitute a consistent whole. It was not the duty of the railway company to construct its embankment so as "to let the waters in time of overflow pass off and flow as they naturally or otherwise would have done." The necessary uses of the embankment and the proper construction thereof as a roadbed for appellant's railway might have made it impossible not to obstruct the natural flow of the waters in their accustomed channels. The exercise of ordinary care might not have been able to prevent this, and it was not required. The only duty of the company was to so construct its embankment that, if there was a diversion thereby into other channels than those followed by the water in its natural course, then the railway company should exercise ordinary care

to provide other channels, or sufficient openings in its embankment to carry off these waters in their diverted course, so as to prevent injury to others. This refers only to waters or freshets that are not extraordinary and unprecedented as explained above.

The judgment is reversed, and the cause is remanded for new trial.