67   142
78   561
d79  183

67   142
85   202
85   337

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* POWER.

Opinion delivered November 4, 1899.

1. PLEADING—AMENDMENT—CONTINUANCE.—A complaint against a carrier alleged that plaintiff was negligently carried past her destination, and put off at the next station. After the issues were joined and the jury impaneled, plaintiff, over defendant's objection, obtained leave to amend the complaint by adding that the conductor was intoxicated and insulting to plaintiff at the time she was carried beyond her station. Defendant asked for a continuance on the ground of surprise, which was refused. *Held*, that the amendment was proper, but, as it introduced a new element of damages, defendant was entitled to a continuance. (Page 144.)

2. EVIDENCE—COMPETENCY.—In an action against a carrier for transporting a passenger beyond her destination, where plaintiff returned by a local freight train when by waiting an hour longer she could have returned on a passenger train, evidence as to the unpleasant conditions on the freight train and of plaintiff's annoyance thereat is inadmissible. (Page 145.)

3. SAME.—In an action for carrying a passenger beyond her destination, evidence concerning the sad plight of plaintiff's son, about whom she was then much distressed, was inadmissible. (Page 146.)

Appeal from Saline Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*Dodge & Johnson,* for appellant.

Appellee should not have been permitted to make the amendment, setting up a new cause of action, without giving appellee additional time.      Newm. Pl. & Pr. 704, 705; 22 Barb. 116.      The court should have given appellant additional time on the ground of surprise.      62 Cal. 443; 77 Mo. 26; 6 How. Pr. 336; 5 Abb. 203; 52 How. Pr. 193; 7 Rob. (La.) 111; 34 Barb. 291–295; 33 N. Y. 69; 39 Cal. 555; 6 Abb. N. Cas. 378; 23 Ark. 543, 545; Sand. & H. Dig., 5839.      The court erred in the admission of evidence as to the condition of the caboose of the local freight on which appellee returned.      The verdict was excessive.

*T. J. Oliphmt* and *Hill & Auten,* for appellee.

Appellant's motion for a continuance was informal.      The evidence complained of was competent, as throwing light on the disputed question of whether the train stopped at appellant's station, and, also, upon the credibility of appellee's statements compared with those of the railroad employees.      42 Ark. 542; 25 *id.* 380.      The verdict is not excessive.      58 Ark. 136.

WOOD, J.      The appellee alleged that she was a passenger on appellant's train going from Little Rock to Mabelvale, and that she was negligently and carelessly carried by said station, Mabelvale, and was put off at the station of Alexander.      She sets out how she was inconvenienced thereby, and for this, and the distress of body and mind incident thereto, she claimed damages in the sum of $2,000.      The appellant answered, denying the allegations of the complaint, and alleging that the train did stop at Mabelvale, but that appellee, through negligence and carelessness, did not alight at said station, although having ample time to do so.

The parties announced ready for trial on the issues thus joined, and a jury was impaneled and sworn, whereupon the plaintiff asked leave to amend her complaint by interlining the

following:  "That the conductor of said train was . intoxicated and abusive, and thus negligently and wantonly run said train past said station of Mabelvale, and was abusive and insulting to plaintiff upon arriving at Alexander, and jostled and insulted her at that time;" and the abuse of said conductor and his treatment of her caused a "nervous shock, and she was made sick thereby." The defendant objected to the above amendment being made, "because it set up a new cause of action and additional elements of damage,  *  *  of which new cause of action the defendant had no notice, and was not prepared for trial." The court overruled said objections, and allowed the amendment to be made, to which ruling "the defendant objected and excepted. Defendant thereupon stated to the court that it was surprised by said amendment, and that it was not prepared for trial upon said complaint as amended, and asked that the case be continued, and it be given proper time to make its defense to said new cause of action, and that the defendant believed, if given proper time, it could make a good defense to said complaint as amended. This the court refused, and ordered the trial to proceed *at once*; to which ruling the defendant objected, and saved its exceptions.

The amendment was proper. The effect of it, however, was such as to introduce an additional element of damages, and perhaps to change the action from one merely upon the contract to an action *ex delicto. Fordyce* v. *Nix*, 58 Ark. 136. Under the original complaint, no proof except as to actual damages growing out of a breach of the contract was allowable. Under the complaint as amended, new and original elements of bodily pain and mental anguish were proper to be considered in determining the amount of damages. Likewise the amended complaint made a case for vindictive damages. *Fordyce* v. *Nix, supra.* Such a radical change from the issues as formulated by the original pleadings, produced by one of the parties just before entering upon the proof, was well calculated to surprise his adversary. The court erred in not granting a continuance or postponement to allow appellant to prepare to meet these new and original phases of the case. The motion for continuance was verbal, and perhaps not full

enough to meet the requirements of good pleading. But the court was sufficiently advised by the statement of appellant, set forth in the bill of exceptions, as to the grounds of its surprise, and its inability, at that juncture of the proceedings, to meet the issues presented by the amended pleadings. It informed the court also that it believed it could present a good defense, if time were given to prepare for it. Appellant was certainly entitled to time. It could not be said that ordinary prudence would have anticipated this change in the issues. It would have been unfair and unjust to press appellant into the trial, because it did not name and could not then name witnesses, other than the railway employees, by whom it expected to rebut the case as made, at the "eleventh hour," by the complaint of appellee. The very object of time under such circumstances is to make inquiry concerning names of witnesses, and to find out if there be witnesses who would establish the contention of appellant as made by its answer to the new matter.

It is said in a Missouri case that the term "surprise" denotes "an unforeseen disappointment in some reasonable expectation, against which ordinary prudence would not have afforded protection." *Fretwell* v. *Laffoon*, 77 Mo. 26. Here is a "change of front" on the eve of battle, without any fault that we can see on the part of appellant, which was greatly prejudicial to appellant's interests, and which it alleges it would be able to meet, if only proper time were given, and which no reasonable prudence could have forestalled. There were other passengers on the train besides appellee. These must have seen the conductor, and doubtless knew something of his condition. Appellant should have been given the opportunity to disprove the alleged misconduct of its conductor by witnesses not in its employ, if it were possible to do so. Forcing the defendant (appellant) to go to trial "at once" under the circumstances, it seems to us, was an abuse of the court's discretion.

In the complaint, as amended, appellee seeks to hold appellant liable for damages caused by carrying her beyond her destination, and for alleged indignities to which she was sub-. jected as she debarked from the train at Alexander. It was

shown that appellee returned of her own volition from Alexander to Mabelvale on a local freight train. She could have returned, by waiting about an hour longer, on a regular passenger train. She was permitted, over appellant's objection, to testify concerning the condition of the freight train, and her return thereon, as follows: "There was some bunks on one side—I suppose it was—some place there was two men lying there covered up and asleep; and there was others sitting around in there smoking and chewing tobacco and spitting ambeer, when I went in there, and I stood, and didn't want to go in there at all, but for the sake of my boy, of course, I would go to try and get him free as soon as possible, and I went in there, and I didn't see anywhere to sit down at all, and I stood up, and there was tobacco and ambeer, and there was three or four smoking. These men were lying there. They snored awhile, and then they rose up, and sat up on the bed. I felt almost afraid in there. I stood over near the door. I never was in a crowd like that before in my life." This testimony was wholly irrelevant. Not being responsive to any issue made by the pleadings, it was error to admit it, and it was prejudicial, for it was calculated to make the jury believe that the inconvenience and annoyance which she suffered by reason of such unpleasant environments was a proper element of damage. Indeed, after the admission of such evidence, over the appellant's protest, the jury were not at liberty to discard it, and we would not be warranted in saying that their verdict was not in some measure influenced by it. No doubt these conditions, which she here graphically portrays, were abhorrent to the acute sensibilities of any refined and delicate lady. But it must be remembered that her touch with these was produced by the keen anxiety which the mother felt for her wayward and afflicted son, and in that sense it was of her own choosing. Certainly the railway company had no connection, remote or proximate, with her unfortunate dilemma. The same may be said of her testimony concerning the sad plight of her boy,—that he was in jail at Little Rock, and that he had been paralyzed ever since he was three years of age. None of the above testimony was relevant, and it is impossible to tell to what extent the verdict was influenced by it.

Appellant does not urge here any objections to the charge of the learned circuit judge, and we therefore will not consider the objections to same reserved at the trial. As the judgment must be reversed, and the cause remanded, for the errors indicated, we pretermit any discussion on the excessiveness of the verdict.

Reversed.

BATTLE, J., not participating.