ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* HOLMES.

Opinion delivered October 31, 1910.

1. CARRIERS—INJURY TO PASSENGERS—INSTRUCTION.—Where, in an action for injury to a passenger in embarking on a train, it was unnecessary, according to undisputed testimony, for the train to start with a jerk, an instruction which submitted to the jury whether the train was started with a jerk of unnecessary violence was too favorable to the railroad company. (Page 342.)

2. APPEAL AND ERROR—WHEN INSTRUCTION HARMLESS.—An instruction which left the jury to fix damages at large, without being controlled by the evidence, was not prejudicial if the verdict was clearly not excessive. (Page 343.)

3. DAMAGES—EXCESSIVENESS.—An award of $2,500 for the loss of an arm which for two-thirds of its length was "crushed all to pieces" is not excessive. (Page 343.)

Appeal from Desha Circuit Court; *J. Bernhardt,* Special Judge; affirmed.

## STATEMENT OF THE COURT.

The appellee, according to the evidence of himself and other witnesses, was in the act of boarding one of appellant's combination freight and passenger trains at Watson station for the purpose of taking passage to Yoncapin. Appellee had mounted the steps, and'had reached the platform, and was "fixing to go in the door of the coach" when the train made a "bump," "a big bump," "a hard coupling," a "jerk," "considerable of a jerk," an "awful hard jerk," as the witnesses for appellee variously describe it. This bump or jerk threw appellee from the platform to the ground. Appellee had under his arm a package of beef. As he fell, his arm struck the rail, and the train ran over it, crushing the "lower two-thirds of his arm and hand all to pieces," so that it was necessary to amputate same. The train "was standing perfectly still" until appellee reached the platform and "got to where he was going in the door," when it started.

Appellee was attended by the surgeon for about twenty-two days. Appellee had a pint of whisky in his pocket. He did not know how many drinks he had taken the evening before his injury, but he had taken only one drink—a bottle of beer —that morning, and was sober. The above are substantially the facts, as the jury might have found them in favor of appellee. Appellee sought and recovered judgment against appellant in the sum of $2,500. He alleged in his complaint that appellant "carelessly and negligently started its train with a sudden and violent jerk," causing the injury above described. Appellant denied the allegations, and set up that appellee did not become a passenger on its train, "but that he undertook to board the train after it left the station and while it was in motion," and that appellee was thus injured through his own negligence.

The testimony of witnesses on behalf of appellant tended to prove that appellant's train stopped at Watson on the day appellee was injured some ten or fifteen minutes for passengers to get off and on; that the train had begun to move, and had gone about ninety feet before appellee attempted to get on same; that appellee waited at a saloon until the train started up, then he was seen approaching, running to catch the train.

"He grabbed the grab iron with his right hand and missed it, and attempted to step up and missed the step, and fell in under there," as one of the witnesses testified.

There was testimony tending to prove that appellee at the time appeared to be under the influence of liquor.

Witnesses on behalf of appellant testified that the train did not start with a jerk, that the train was light, and that it was unnecessary that it should start up with a jerk.

The above testimony on behalf of appellant tended to prove that appellant was not negligent, and that appellee was negligent. Other facts stated in opinion.

*W. E. Hemingway, E. B. Kinsworthy* and *Bridges, Wooldridge & Gantt,* for appellant.

1. The mere fact that there was a jerk in starting the train was not sufficient to show negligence. It was a mixed freight and passenger train. 3 Hutchinson on Carriers, (3 ed.), § 1217; 4 Elliott on Railroads, § 1589; 44 S. W. 213; 71 Ark. 590; 82 Ark. 393; 83 Ark. 22. A carrier is required to try to protect its passengers from such dangers only as it may reasonably anticipate. 88 Ark. 12; 86 Ark. 325. It owes no duty to a belated passenger to delay the train after allowing a reasonable time to get aboard. 102 N. Y. 280; 54 Ark. 25; 87 Ark. 581; 92 Ga. 293. After such reasonable time the conductor is not required to examine to see that all intending passengers have boarded the train. 24 Am. & Eng. R. Cas. (N. S.), 923, note; 6 Cyc. 613; 28 Mich. 440; 73 Ark. 548; 50 S. W. 581.

2. The testimony of Dr. McRae that he was told to take charge of plaintiff after the accident was improperly admitted. 1 Enc. of Evidence, 552; 65 Ark. 52; 78 Ark. 381; *Id.* 147; 89 Ark. 556; 70 Ark. 179.

3. The fourth instruction errs principally in directing the jury that, if they found certain things to be true, "then in this case you should find for the plaintiff in some amount, not exceeding $5,020." 58 Ark. 136; 87 Ark. 123; 69 Ill. 426; 83 Ill. 440; 174 Ill. 398.

4. The verdict is excessive.

*X. O. Pindall,* for appellee.

1. Starting a train with jerks and jars of unusual and unnecessary violence is held to be negligence on the part of the company. 82 Ark. 393; 83 Ark. 22.

2. If the testimony of McRae complained of was improper, the objection to it was merely technical, and the testimony was harmless. Appellant should have asked a proper instruction concerning it, or should have pointed out to the court its injurious effects; 13 Ark. 344; 94 Ark. 407; 89 Ark. 24.

3. The amount sued for was reduced by the plaintiff, without objection from defendant, before the jury were instructed. The fourth instruction was neither erroneous nor hurtful. 92 Ark. 436. Moreover, there was no error pointed out to the trial court. 124 S. W. 247; 89 Ark. 82; 66 Ark. 46; 87 Ark. 123.

Wood, J., (after stating the facts). Witnesses for appellant testified that it was unnecessary in the proper operation of the train to start same with a jerk. Then, if the train did start with a jerk, as the witnesses for appellee testified, this was evidence of negligence on the part of appellant, and if the injury of appellee was the result of this negligence, as the evidence tended to prove, then appellant was liable. The questions of negligence and contributory negligence were properly submitted for determination by the jury and upon correct declarations of law.

This court has defined the duty of carriers to passengers on combination freight and passenger trains, and also the duty of passengers on such trains with reference to their own safety. We need not repeat here the rules applicable in such cases.

The instructions of the court were in harmony with the doctrine announced in the following cases: *St. Louis, I. M. & S. Ry. Co.* v. *Hartung,* 95 Ark. 220; *Arkansas S. W. Ry. Co.* v. *Wingfield,* 94 Ark. 75; *St. Louis S. W. Ry. Co.* v. *Jackson,* 93 Ark. 119; *Arkansas Central Rd. Co.* v. *Janson,* 90 Ark. 494; *St. Louis, I. M. & S. Ry. Co.* v. *Cobb,* 89 Ark. 82; *St. Louis, I. M. & S. Ry. Co.* v. *Brabbzson,* 87 Ark. 109; *Pasley* v. *St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 22; *Rodgers* v. *Choctaw, O. & G. Ry. Co.,* 76 Ark. 520.

Since, according to the undisputed evidence of witnesses for appellant, it was unnecessary to start this particular train

with any jerk at all, the instructions at the instance of both parties submitting the question to the jury as to whether the jerk, if any, was a "sudden, violent and unusual" one, or of "unusual and unnecessary violence," were more favorable to appellant than otherwise. Instruction number four, given at the instance of appellee, after declaring the duty of carriers to passengers on mixed freight and passenger·trains, and that the passenger assumed the risk incident to the proper operation of such a train, continued as follows:

"And, so in this case, if you find from the evidence, by a fair preponderance thereof, that Webb Holmes was injured by a sudden, violent and unusual jerk in the starting of one of the defendant's trains, which said jerk amounted to more than a necessary incident in the starting of such train, and that he was at the time a passenger on said train, free from negligence on his part which could have contributed to his injury, and within his rights as a passenger, then in this case you should find for the plaintiff in some amount not exceeding $5,020."

Counsel urged, as their "principal objection" to this instruction, "that it leaves the damages at large without being in any way controlled by the evidence." Conceding this, the amount of the verdict shows that it was not excessive, and therefore the appellant was not prejudiced. · As to damages, the only issue was as to the amount of damage appellee sustained by way of pain and suffering and medical attention.

There was no controversy as to the character of appellee's injury, nor as to the sum expended for medical services. The verdict was less than half of the amount asked in the complaint. Even if the instruction offends the rule announced in *Fordyce* v. *Nix*, 58 Ark. 136, and *St. Louis S. W. Ry. Co.* v. *Myzell*, 87 Ark. 123, we can only reverse for errors that are prejudicial. The sum of $2,500 for the pain and suffering incident to the loss of an arm that, for two-thirds of its length, "had been crushed all to pieces," is certainly not exorbitant.

After the injury to appellee the conductor and division superintendent of appellant called a surgeon and asked him to "rush on" and "to take charge of" the injured man and "render all necessary means he could." This conduct did not tend in the slightest degree to prove that the injury to appellee was caused

through appellant's negligence. It was but the manifestation of commendable sympathy for one in distress and the expression of a desire to relieve his suffering. It would be unheard of to construe these humane impulses of the agents of appellant as admissions of negligence in causing the injury to appellee. Therefore the doctrine of *St. Louis, I. M. & S. Ry. Co.* v. *Walker,* 89 Ark. 556; *St. Louis S. W. Ry. Co.* v. *Plumlee,* 78 Ark. 147, *Prescott & N. W. Ry. Co.* v. *Smith,* 70 Ark. 179, has no application.

We find no reversible error, and the judgment is therefore affirmed.