BUTLER COUNTY RAILROAD COMPANY *v*. EXUM.

Opinion delivered June 5, 1916.

1.  PLEADING AND PRACTICE—AMENDMENTS—TRIAL.—The trial court has a discretion to allow amendments to the pleadings, and its ruling in allowing amendments before the trial has commenced, after it has begun, and before it is ended, and in allowing an amendment to conform to the proof, after all the evidence has been taken, will be sustained unless there is a manifest abuse of discretion.

2.  PLEADING AND PRACTICE—AMENDMENT TO COMPLAINT—PERSONAL INJURY ACTION.—It is not error, in an action for damages for mental anguish, to permit the plaintiff to amend her complaint, after the answer was filed, and while the evidence was being taken, by alleging "that she was made violently sick by reason of tobacco smoke wrongfully permitted on the train."

3.  TRIAL—AMENDMENT TO PLEADING—SURPRISE.—Where defendant is surprised by the introduction of certain testimony, and the amendment of the complaint in conformity therewith, in order to gain relief, defendant should ask for the suspension of the trial or for a continuance.

4.  CARRIERS—DUTY TO ARREST DRUNKEN PASSENGERS.—It is the duty of the conductor of a train, under Act 44, p. 99, Acts 1909, to arrest, and hand over to a peace officer, drunken passengers on his train, and where he fails to do so, the carrier will be liable in damages for an injury sustained by a fellow passenger in consequence thereof.

5.  DAMAGES—DRUNKEN PASSENGER—MENTAL ANGUISH.—Where a female passenger on a train was subjected to outrageous treatment at the hands of drunken fellow passengers, a verdict of $100 will not be held to be excessive.

Appeal from Clay Circuit Court, Western District; *J. F. Gautney,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellee sued appellant, alleging that it was operating a railroad from Poplar Bluff, Mo., to Piggott, Ark.; that appellee purchased a ticket at Poplar Bluff for Pollard, on appellant's line; that she and her four children were passengers on the train; that appellant unlawfully permitted drunken persons to get on the train, and that they abused appellee, cursing her, tearing up her basket and scattering its contents over the car, calling her vile names and using vulgar language in her presence; that her basket of clothing was damaged in the sum of $10, and that she suffered mental anguish in the sum of $1,000. She prayed for actual damages in the sum of $10, damages for mental anguish in the sum of $1,000, and for punitive damages in the sum of $1,000 making a total of $2,010.

The appellee answered denying the material allegations of the complaint and setting up that whatever damage was done to appellee's basket was settled for by the parties who did such damage, and that appellee accepted the amount paid her by them as a full settlement.

After the answer was filed and the evidence was being adduced appellee was permitted, over the objection of appellant, to amend her complaint by alleging "that she was made violently sick by reason of tobacco smoke wrongfully permitted on the train."

There was testimony on the part of appellee tending to sustain the allegations of her complaint. She testified that men got on the train who were drunk and in the presence of a large crowd of passengers on the train they were cursing and their conduct made her nervous. She says that men were smoking in the car. She called the attention of the auditor and the conductor to that and they requested the men to quit smoking as there were ladies in the car. The car was absolutely full of smoke. She could hardly get her breath, and "it made

·her sick with a headache," and she was·"going to vomit." The men riding on the train tore up her basket. She told the conductor of it and the man said "You are a damned liar." The conductor looked at him but never said a word. One of the drunken men, when his attention was called to the fact that there were ladies in the car, said:. "God damn the ladies; let's drink. He cursed us and blackguarded us and drank." She saw three quarts of whiskey. She "didn't hear the trainmen say a word to protect us." The clothes had clay-mud all over them where the men had walked on them. They tore up the basket in which she had the clothes and threw it out of the window. She stated on cross-examination that the men asked her what the basket was worth and her sister told them a dollar and they gave a dollar to her boy, to which she made no objection. The boy might have put the dollar in her pocket book; if so, she got it.

The appellee's testimony was substantially corroborated by the testimony of her sister, who was at the same time a passenger on the train.

The testimony on behalf of the appellant was to the effect that there was no one drunk on the car on the occasion mentioned by the appellee. Passengers who were on the same car with appellee testified that they were in position to see and hear what was said and done. One of these witnesses stated that the lady's basket was sitting between two seats, a part of it extending out in the aisle. A man by the name of Farmer came along and picked up the basket to sit it on another seat. When he took hold of the basket the handle came off and some of the clothes fell on the floor. Appellee said if they would pay her a dollar it would be settled and they paid it.

The conductor and the auditor, in their testimony, denied that there was any disturbance on the train or any abusive or insulting language. They did not permit drunken men to get on the car because it was a violation of the law for them to do so. There were some

men on the car who were smoking and the auditor asked them to quit and they did so. The conductor testified that there was not any profane or abusive language used; stated that the general conduct of the passengers on the train was good; that the appellee made no complaint about smoking or objectionable words in the car.

There was a judgment in favor of the appellee in the sum of $100, and both parties have appealed.

*Spence & Dudley,* for appellant.

1. It was error to permit plaintiff to amend her complaint so as to set up a new cause of action. Kirby's Digest, § 6145; Pomeroy Rem. & Rem. Rights, § 554; 59 Ark. 165; 75 *Id.* 465; 34 *Id.* 144; 56 *Id.* 166; 94 *Id.* 276.

2. The verdict is contrary to the law and the evidence. A verdict should have been directed for defendant. All the injury done was paid for and accepted.

*C. T. Bloodworth,* for appellee.

1. The complaint was properly allowed to be amended. 58 Ark. 13; 103 *Id.* 82.

2. Appellee should have been allowed to recover for the profane, obscene and abusive language. 118 Ark. 1, 141 S. W. (Tex.) 821.

3. Physical injury was proven and punitive damages should have been allowed.

WOOD, J., (after stating the facts). (1) Large discretion is vested in trial courts under our statute and decisions in the matter of permitting amendments to pleadings. The ruling of a trial court in allowing amendments before the trial has commenced, and after it has begun and before it is ended, and even after the evidence has all been taken to conform to the proof, will be sustained unless there is a manifest abuse of discretion. *American Bonding Co. v. Morris,* 104 Ark. 276; *Oakleaf Mill Co. v. Cooper,* 103 Ark. 82; *Rucker v. Martin,* 94 Ark. 365; *McFadden v. Stark,* 58 Ark. 7.

(2-3) Appellant could not have been surprised by the amendment. It was not inconsistent with the claim

for damages set up in the complaint.  The effect of the amendment was not to change the cause of action, but only to supply the necessary allegation to support appellee's prayer for damages for mental anguish.  But even if appellant had been surprised it was its duty to have asked the court to suspend the trial or continue the case before it could complain.  See *St. Louis, I. M. & S. Ry. Co.* v. *Power,* 67 Ark. 142.  The appellant was not prejudiced by the court's ruling.

The only other ground urged for a reversal is that there was no evidence to sustain the verdict.  The evidence was amply sufficient to sustain the verdict.

(4)  It appears from the testimony on behalf of the appellee that persons on the train and in the same coach with her were permitted to engage in a scene of drunken debauchery and ribaldry.  They absolutely filled the car where appellee was riding with smoke, which gave her a headache and made her sick at the stomach.  It was the duty of the conductor, when his attention was called to the intoxicated condition of these persons to have arrested them and handed them over to some peace officer at the first opportunity.  Act 44, Acts of 1909, p. 99.

The purpose of the above act, in making conductors peace officers and giving them power to arrest drunken persons on their trains, was to protect passengers from just such insults and indignities as is discovered by the testimony on behalf of appellee in this record.  The jury accepted the testimony of appellee, thereby assuming that the testimony of appellee was true.

(5)  A verdict in the sum of $100 is but a moderate compensation for the outrageous treatment and the mental and physical suffering which she endured at the hands of drunken rowdies as the direct result of the negligence of appellant's conductor in failing to do his duty under the circumstances.

The judgment is therefore correct, and it is affirmed.