WILLIAMS *v.* HILDEBRAND.

4-9708                                    247 S. W. 2d 356

Opinion delivered March 10, 1952.
Rehearing denied April 21, 1952.

*Wils Davis* and *Nance & Nance,* for appellant.

*Hale & Fogleman,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit for damages resulting from the appellant's wrongful dissolution of a partnership that existed between her and the appellee. The appellant, Ruby Williams, has a life estate in a 548-acre farm in Crittenden County.   In October of 1950 she and the appellee, L. B. Hildebrand, signed a partnership agreement under which the farm was to be operated in 1951, 1952, and 1953.   By this contract the parties agreed that Mrs. Williams would furnish the farm to the partnership, that Hildebrand would devote his time to the management and supervision of the farm, and that the profits would be divided equally. In his complaint Hildebrand asserted that in February, 1951, Mrs. Williams canceled the contract without cause, damaging Hildebrand in the sum of $50,000.   Trial before a jury resulted in a verdict for the plaintiff for $12,500.   On this appeal the basic issue is whether the award of damages is supported by the proof.

These litigants, both now over sixty-five years of age, knew each other in their youth when they were living

near Memphis. Hildebrand moved to California in 1911 and became a resident of that state. He and his wife returned to Arkansas for a vacation in 1950 and visited in the home of Mrs. Williams, who was then Mrs. Booth. Mrs. Booth was dissatisfied with the work of her farm overseer and, according to the Hildebrands, entreated the appellee to take over the management of the property. The contract of partnership was later prepared by Mrs. Booth's attorney and was signed by Hildebrand after his return to California. In reliance upon the contract Hildebrand resigned his job, which paid $3,600 a year, sold his house and furniture at a loss, and came back to Arkansas late in 1950.

Upon his arrival Hildebrand assumed his duties as managing partner in the operation of the farm. The parties' relationship appears to have been amicable until shortly after the death of Mrs. Booth's husband on January 23, 1951. On February 5 Mrs. Booth sent Hildebrand a letter in which she declared the partnership to be at an end for the reason that Hildebrand had failed to prepare adequately for farming during the coming year. This suit was filed in March, when the contract still had almost the entire three years to run.

Mrs. Booth's power to dissolve the partnership is not questioned. The relationship between partners involves such mutual trust and confidence that either partner has the power, though not always the right, to terminate the agreement at will. If the dissolution is in violation of the contract, as the jury found it to have been here, the ousted partner is entitled to damages. Ark. Stats. 1947, § 65-138 (2, a, II). The measure of damages, when the partnership was to have continued for a fixed term, is the profits that the injured partner would have received. As the court said in *Bagley* v. *Smith,* 10 N. Y. 489, 61 Am. Dec. 756: ''The object of commercial partnerships is profit. This is the motive upon which men enter into the relation. The only legitimate beneficial consequence of continuing a partnership is the making of profits. The most direct and legitimate injurious consequence which can follow upon an unauthorized dissolution of a part-

nership is the loss of profits. Unless that loss can be made up to the injured party, it is idle to say that any obligation is imposed by a contract to continue a partnership for a fixed period."

The evidence must afford a sufficient basis for estimating the anticipated profits with reasonable certainty. *Hurley* v. *Oliver,* 91 Ark. 427, 121 S. W. 920. Also, there must be deducted whatever amounts the plaintiff may fairly be expected to earn in other suitable employment, the defendant having the burden of proof upon this issue. *School Dist. No. 65, etc.,* v. *Wright,* 184 Ark. 405, 42 S. W. 2d 555. In this connection we have held that the value of the services that the plaintiff would have performed under the broken contract should not be deducted in determining what the profits would have been; for to charge the plaintiff with the value of his services under the contract as well as with what he might have earned in other employment would be charging him twice for the same thing. *Somers* v. *Musolf,* 86 Ark. 97, 109 S. W. 1173.

The fundamental difficulty in the case at bar is that the issue of Hildebrand's expected profits under the contract was not submitted to the jury. Hildebrand made no effort to prove how profitable this farm had been in the past or what profits are ordinarily realized from similar farming operations in the same vicinity. And even had such proof been made the court withdrew the issue from the jury by giving this instruction at the defendant's request: "You are instructed that the plaintiff was not obliged to wait until the expiration of the contract to bring suit. He could and did elect to bring this action for damages for an alleged breach of the contract before the expiration thereof, and, having brought his action before the expiration of his contract, he cannot claim any damages based upon the value of any crops that might have been produced, or any profits that might have been derived from the cultivation of the land mentioned in the contract."

In view of the necessity for a new trial we point out that this instruction is erroneous, since it precludes the jury from applying the correct measure of damages. The

instruction seems to have been based upon cases such as *Van Winkler* v. *Satterfield*, 58 Ark. 617, 25 S. W. 1113, 23 L. R. A. 853, where we held that an employee who sues for breach of a contract of employment at fixed wages cannot recover for damages he may suffer after the trial. The reason given is that the damages are too uncertain, since the plaintiff may, after the recovery of the judgment, immediately obtain other equally lucrative employment. This reasoning is criticized by Williston in his work on Contracts, § 1362, and our cases have never extended the doctrine to a situation involving future profits as distinguished from a set wage or salary.

Even though the issue of anticipated profits did not go to the jury the appellee insists that there is other evidence in the record that sustains the award of $12,500. He relies principally upon proof that he sold his California property at a loss of $5,000 and gave up a job that paid $3,600 a year. The argument is that these are special damages that were within the contemplation of the parties when the contract was made. The fallacy in this argument is that these losses resulted not from Mrs. Booth's breach of the contract but instead from the fact that Hildebrand made the agreement in the first place. They were losses that Hildebrand was willing to suffer in order to obtain the profits he expected the venture to produce. Even had the contract been fully performed Hildebrand would not have been able to recover these expenses from his partner. Hence the authorities agree that when a partner's damages are measured by his expected profits he is not entitled to recover expenses or losses incurred preparatory to entering the partnership. *Overstreet* v. *Merritt*, 186 Calif. 494, 200 P. 11; *Tygart* v. *Albritton*, 5 Ga. App. 412, 63 S. E. 521; *Williams* v. *Barton*, 13 La. 404. While the testimony about the California losses is relevant as showing Hildebrand's good faith and the consequent likelihood that it was Mrs. Booth who first breached the contract, it cannot serve as a foundation for the verdict in the absence of proof that the profits would have been at least $12,500. Hildebrand should be compensated only for the damage resulting from Mrs. Booth's

termination of the agreement, and unless the profits would have equalled the amount of the verdict it is evident that a judgment for $12,500 for preparatory outlays puts Hildebrand in a better position than he would have occupied had there been no breach of the agreement.

Counsel for the appellee also stress a part of Hildebrand's testimony, in which he said that Mrs. Booth had expressed her opinion of the value of his interest in the partnership at a time before any dissension had arisen. He testified that Mrs. Booth knew "that the wife was beginning to get dissatisfied living in Memphis alone and me driving back and forth over here every day, and so she says, 'I don't believe that your wife is going to be satisfied,' and 'How much would you release the contract for?' I says, 'I don't know. You make me an offer.' She did." Q. "How much?" A. "Fifteen thousand dollars." Q. "Was that accepted?" A. "I told her yes; I would accept that to step out." (We have omitted the various objections that were made to this testimony.) It is not contended that this casual incident created a binding contract for the purchase of Hildebrand's interest.

The appellant insists that this testimony should have been excluded as an offer of compromise, while the appellee contends that there was then no dispute subject to compromise. We are not in agreement as to whether this proof involves an offer of compromise, but it is evident that the verdict cannot be sustained upon this testimony alone, in view of the other errors that we have mentioned. The issue was not the abstract value of Hildebrand's contract but the profits that he would have received had Mrs. Booth performed her obligations. Williston, Contracts, § 1339. Had there been competent evidence of such profits and had this evidence been disputed by the defendant, proof of the incident referred to might have been relevant for rebuttal or impeachment purposes. But whatever slight value the testimony may have as an indication of anticipated profits is beside the point on this appeal, since the instruction we have quoted prevented the jury from basing its verdict upon such profits.

Reversed and remanded.